[Criminal No. 856.   Filed October 5, 1937.]

[72 Pac. (2d) 425.]

A. W. KEEFE, Appellant, v. STATE OF ARIZONA, Respondent.

294

Mr. John J. McCullough, for Appellant.

Mr. Joe Conway, Attorney General, Mr. W. E. Polley and Mr. J. M. Johnson, his Assistants, and Mr. Frank E. Thomas, County Attorney of Cochise County, for Respondent.

LOCKWOOD, J.—A. W. Keefe, hereinafter called defendant, was convicted of a violation of section 4650, Rev. Code 1928. The offense was alleged to have been committed upon a four-year old girl, and the only evidence submitted to the jury bearing directly on the charge was that of the father and mother of the child, who testified as to statements made to them by their daughter and her six-year old brother several days

after it is claimed the offense had been committed. When this testimony was offered, counsel for the defendant objected thereto on the ground that it was hearsay, and, after the State had rested, moved for an instructed verdict of not guilty on the ground that there was no relevant testimony of the commission of the crime charged.

The sole question for our consideration is whether or not the testimony of the father and mother was properly admitted. If it was, there is ample evidence to sustain the conviction. If it was not, there is no evidence in the record on which a verdict of guilty could legally be based. The mother of the child testified, in substance, that on a certain Saturday she discovered the little girl and her brother, a boy of about six years, engaged in immoral conduct, and that, when she reproved them, the little girl told her that defendant did such things to her all the time. She interrogated the child further as to defendant's conduct and drew from her a fairly comprehensive and detailed account thereof. The little boy confirmed his sister's statements, saying that he had witnessed such acts. On the father's return from his work that evening, the mother told him what the children had said, and he questioned them, securing substantially the same information as that given to the mother. After the father and mother had testified to these conversations with the children, over the objection of counsel for defendant, the little boy was offered as a witness by the State. Counsel for defendant objected on the ground that he was not competent as a witness under the provisions of section 4412, subdivision 2, and section 5176, Revised Code 1928, which read as follows:

"§ 4412. The following persons cannot be witnesses in a civil action: . . .

"2. Children under ten years of age, who appear incapable of receiving just impressions of the facts

respecting which they are examined, or of relating them truly.''

''§ 5176. *Civil rules applicable to determine competency.* The laws for determining the competency of witnesses in civil actions are applicable also to criminal actions and proceedings, except as otherwise provided in this code.''

The trial court permitted the child to be examined on his *voir dire,* and then stated he did not think the child was sufficiently qualified to testify under oath, but permitted him to detail to the jury, without being sworn, what he claimed he had witnessed between his sister and defendant, and, after that statement had been made, came to the conclusion that it was error to admit it and directed the jury to disregard it.

The crime charged is of such a nature that every right-minded man or woman views it with horror and aversion, and especially when committed by an adult upon the person of a child. But for this very reason justice requires particular care that one charged with such a crime should not be convicted thereof on insufficient or improper evidence. A great judge once said in regard to rape, that such a charge was one ''easy to make, difficult to prove and more difficult to disprove, though the accused be never so innocent.'' (1778) 1 Hale P. C. 633. Much more is this true of such a crime as the one charged herein. For this reason we must scrutinize most carefully the evidence on which the conviction in this case was based to see whether it was legally admissible to prove the ultimate fact in issue.

■■ The objection made by defendant's counsel to its introduction is that it was hearsay. Hearsay evidence may be illustrated thus: When the ultimate fact in issue is whether A has done a certain act, C offers to testify that he heard B say that he, B, saw the act committed by A. The general rule is that

such testimony by C is hearsay, and that it is not admissible to prove that A committed the act in question. There are, however, a number of exceptions thereto, and counsel for the State, while admitting the rule, claim that this case falls within that exception which is commonly called *res gestae*. There has been such a confusion of ideas and such indiscriminate use of the words *"res gestae"* that it is almost impossible, on reading the decisions involving this question, to discover the real extent of the exceptions and the principles involved therein. The phrase *"res gestae"* means literally "the thing done" and it is used in law as meaning the circumstances which are the automatic and undesigned incidents of the particular act in issue, and which are admissible in evidence when illustrative and explanatory of the act. *People* v. *Wong Ark,* 96 Cal. 125, 30 Pac. 1115. The phrase is frequently applied to statements or explanations made in regard to an act in question by witnesses thereof. Such statements or explanations, however, are properly divided into two classes, and the admissibility of the respective classes is based upon entirely different principles of law and logic. They may be defined as "spontaneous exclamations" and "verbal acts." It is generally due to a confusion of these two classes of evidence and the principles governing their admissibility that the conflict between the many apparently irreconcilable decisions has arisen.

A spontaneous exclamation may be defined as a statement or exclamation made immediately after some exciting occasion by a participant or spectator and asserting the circumstances of that occasion as it is observed by him. The admissibility of such exclamation is based on our experience that, under certain external circumstances of physical or mental shock, a stress of nervous excitement may be produced in a spectator which stills the reflective faculties and

removes their control, so that the utterance which then occurs is a spontaneous and sincere response to the actual sensations and perceptions already produced by the external shock. Since this utterance is made under the immediate and uncontrolled domination of the senses, rather than reason and reflection, and during the brief period when consideration of self-interest could not have been fully brought to bear, the utterance may be taken as expressing the real belief of the speaker as to the facts just observed by him. Wigmore on Ev., 2d ed., par. 1747.

■ Verbal acts are utterances which accompany some act or conduct to which it is desired to give a legal effect. When such act has intrinsically no definite legal significance, or only an ambiguous one, its legal purport or tenor may be ascertained by considering the words accompanying it, and these utterances thus enter merely as a verbal part of the act. The use of utterances as verbal acts has four limitations: (a) The conduct to be characterized by these words must be material to the issue; (b) it must be equivocal in its nature; (c) the words must aid in giving legal significance to the conduct; and (d) the words must accompany the conduct. Wigmore on Ev., 2d ed., par. 1772.

■ It will be seen that these two classes of statements or exclamations are based on very different principles, and that the question of their admissibility must be determined by the principles applicable to the class within which they fall. Apparently many of the courts have confused these principles by attempting to apply to spontaneous exclamations the time limitations as related to the original act in question, which properly belongs only to verbal acts. The true test in spontaneous exclamations is not when the exclamation was made, but whether under all the cir-

cumstances of the particular exclamation the speaker may be considered as speaking under the stress of nervous excitement and shock produced by the act in issue, or whether that nervous excitement has died away so that the remark is elicited by the shock of some other act not at issue, which revives the memory of the act in question.

The testimony under discussion obviously does not fall under the head of verbal acts, but was offered on the theory of spontaneous exclamations. Does it fall within that category? The statements of the children were made on Saturday, and the testimony of the mother was that, if the crime had been committed, it could not have been later than the previous Monday. Let us examine the testimony and see whether it could reasonably be assumed that the statements of the children were made as a spontaneous and sincere response to the shock of an act committed on the Monday previous. We are constrained to hold that such a conclusion is not reasonable nor in consonance with the ordinary experience of mankind. The matter which elicited the statements was obviously not any act which had occurred the previous Monday, but the shock caused the children by being found *in flagrante delicto,* and the children's statement was obviously an attempt to justify their behavior at the time by giving defendant's previous conduct as an excuse therefor, rather than the nervous excitement caused by any acts of the latter. The case of *Soto* v. *Territory,* 12 Ariz. 36, 94 Pac. 1104, cited and relied upon by both parties, illustrates clearly when the statements of a child are admissible as spontaneous exclamations and when they are not. In that case defendant was accused of substantially the same crime as in the present one, and the mother therein testified as to statements made by the child.

So far the two cases are exactly parallel, but in the Soto case the child at the time of its statement to the mother, not more than an hour and a half after the commission of the offense, was crying and pale and had sustained severe bodily injuries, and was complaining of these injuries both to the mother and other witnesses. It is obvious the statements of the child under these circumstances were made as a result of the shock and nervous excitement of the crime charged, and were properly admitted. In the present case there was nothing indicating any shock or nervous excitement on the part of the children as a result of the crime charged when the statements were made to the mother and father. They were elicited as the result of another and entirely independent transaction and were given in extenuation and explanation of such transaction, and not of the crime charged.

We are compelled to hold that the testimony of the father and mother of the children in the present case does not fall within that exception to the hearsay rule known as spontaneous exclamation, for the reason the evidence in no way indicates that the statements of the children were the result of nervous excitement and shock caused by the crime with which the defendant is charged, but rather that they were an attempt at an excuse for an entirely independent incident, occuring a number of days after the alleged crime could have been committed. For these reasons it is necessary that the case be reversed on the ground there was not before the jury sufficient legal evidence to sustain the charge.

■■ Since the case must go back for a new trial, we think we should refer to other matters appearing in the record, which cannot be considered in determining whether the present verdict and judgment should be reversed, but which may be very material in a

new trial. The State offered the brother of the child as a witness. Objection was made on the ground that he was not qualified under section 4412, *supra,* and he was examined on his *voir dire.* A question of this kind was, of course, within the discretion of the trial judge for he saw the child and could observe him as we cannot. We think, however, that unless there was something in his conduct, appearance, or attitude not shown by the record before us that he should have been permitted to testify under oath. It appears to us from his *voir dire* that he understood the difference between truth and falsehood, that he knew the penalty, both spiritual and temporal, for lying, and that if he swore to tell the truth it meant that he must tell the truth. He also stated that, while he had talked with his father and mother and the county attorney in regard to the case, they had not told him what to say, for the reason that he knew the facts himself. It is true that when the court said, ''Do you know what an oath is?'' he said ''No,'' but this is not absolutely necessary for the qualification of a child as a witness. He may be, to give the converse language of the statute, ''capable of receiving just impressions of the facts relating to which he was examined and of relating them truly'' and still not understand the technical meaning of the word ''oath.'' This, however, is true of many adult witnesses until it is explained to them, and we think the trial court could easily have made the boy understand, by appropriate language, that when he took the oath he was promising to tell the truth under penalty of punishment. It was, of course, error of the most glaring kind for the court to permit him to make his statement before the jury not under oath, and a mere instruction to disregard the statement in a case of this kind would be utterly futile.

The judgment of the superior court of Cochise county is reversed and the case remanded, with instructions to grant a new trial in accordance with the principles laid down in this opinion.

McALISTER, C. J., and ROSS, J., concur.