THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* BENITO GONZÁLEZ ALERS, Defendant and Appellant.

No. 11137.   Argued March 1, 1946.—Decided May 29, 1946.

*José Veray, Jr.,* for appellant. *E. Campos del Toro, Attorney General, Luis Negrón Fernández, First Assistant Attorney General,* and *J. Correa Suárez, Assistant Prosecuting Attorney,* for appellee.

MR. JUSTICE TODD, JR., delivered the opinion of the court.

The defendant appeals from a judgment rendered by the District Court of Aguadilla sentencing him to one year in the penitentiary upon being convicted by a jury of the infamous crime against nature. He alleges in his appeal that the lower court erred in permitting witness Bienvenida Bonet Ríos, mother of Casiano Bonet, the injured child, five years and a half of age, to testify as to the statements made by the latter and which tended to inculpate the defendant, after said child had already died at the time of the trial; in permitting said witness to testify in order to qualify the child as to his capacity and degree of intelligence and receive his testimony as part of the *res gestae,* and in overruling the motion for nonsuit and finding the defendant guilty on hearsay evidence, since even under the theory that it was admissible as part of the *res gestae,* the same was insufficient for a conviction in the absence of some essential fact established by evidence *aliunde.* The three assignments of error involve one main question, that is, whether the evidence for the prosecution, the only one presented at the trial, is sufficient to support the conviction. Let us see.

█ Dr. Luis A. Sánchez testified that he examined the boy Casiano Bonet and found that his rectum was lacerated; that said lacerations may have been caused by any foreign body, specifying a number of them.

Bienvenida Bonet Ríos, mother of the child, testified that the latter died several months before the trial; that he was born on January 4, 1938 (the occurrence took place, according to the information, on October 25, 1943, so that the child was five years and nine months of age); that she lived with her husband and her children in the ward of Guaniquilla, Aguada; that she knew the defendant who was her neighbor; that on the day of the occurrence, about four or five o'clock in the afternoon, her son Casiano was playing with other children in the house of the defendant; that she saw when the defendant sent her son to ask permission to go swimming with him in the brook and she consented because she trusted the defendant, who was her neighbor; that she saw when they left for the brook and the defendant prevented another child who wanted to go from accompanying them; that about an hour later her son returned crying, took off his clothing and lay down; that she asked him what had happened and he told her that the defendant had taken hold of him, thrown him to the ground and told him to keep quiet, that he should not say anything because she would spank him, that he offered to cut a piece of cane for him and gave him a penny; that he threw him down on a tin can and then the defendant introduced his member in the rectum; that the clothing of the child was stained with blood and that he had the rectum bruised and completely lacerated; that she then called defendant's mother and the boy repeated what had happened but the defendant denied it and stated that the boy had fallen down, but the boy insisted that he had committed those immoral acts; that on the next day her husband took the child to the hospital where Dr. Sánchez examined him and later they

196

all went to the office of the district attorney where they told the latter what had happened. Is this evidence sufficient?

The testimony of the physician established the fact that some one had committed the crime against nature on the person of the child.

That of the mother has two aspects: The first, direct, as to the facts which she herself saw, to wit: she saw her child playing at defendant's house and when the latter sent him to ask permission to go swimming in the brook and when they both left and the defendant prevented the other child from going with them. Also the fact that she saw the physical condition of her child and his clothes immediately after he returned to his home, and she was present when her son insisted before the defendant that he had committed immoral acts with him, which the defendant denied by saying that he had fallen down.

This evidence was clearly admissible. Although circumstantial, it tended to connect the defendant with the commission of the crime. Was the rest of the mother's testimony admissible as to what her son told her? We are of the opinion that under the doctrine of *res gestae* it was admissible.

These statements were made immediately after the boy's return from the brook, when he was still suffering from the injury caused him and under fear of what might happen to him if, according to the defendant, he should say anything. The fact that the mother had to ask the child what was the matter with him before he narrated the criminal assault committed against him, does not lessen the spontaneity of his statements if we take into account his age and defendant's threats. In *People* v. *Fuentes*, 63 P.R.R. 42, we held that the complaint of the prosecutrix to her mother, in response to the latter's inquiries, five days after the commission of the act, was admissible as corroboration or as part of the *res gestae*, as the prosecutrix feared the threats of the perpetrator of the assault. We stated then, and repeat now, that

whether a rule allowing the admission of this kind of evidence is applied with more or less rigidity depends on the special circumstances of each case. In turn, our holding in the *Fuentes* case was but a repetition of the principle set forth by Wigmore, copied in *People* v. *Calventy,* 34 P.R.R. 375–377, to the effect that: "It is to be observed that the statements *need not be strictly contemporaneous* with the exciting cause; they may be subsequent to it, provided there has not been time for the exciting influence to lose it sway and to be dissipated. . . . Furthermore, there can be *no definite and fixed limit* of time. Each case must depend upon its own circumstances." Wigmore on Evidence, vol. VI, p. 142, § 1750.

In the *Calventy* case we copied another paragraph of the same author in the course of which he stated that: "There is a lamentable waste of time by Supreme Courts in here attempting either to create or to respect precedents. Instead of struggling weakly for the impossible, they should decisively insist that every case be treated upon its own circumstances. They should, if they are able, lift themselves sensibly to the even greater height of leaving the application of the principle absolutely to the determination of the trial court. . . ." To such recommendation this court answered, through Mr. Justice Hutchison, as follows:

"We need not speculate as to whether or not it would be entirely safe, or premature or perilous, at this time and in this jurisdiction, to attempt an Elysian flight through the altitudinal zone of the penultimate statement last above quoted. For the present, it will suffice to say that unless and until an appellant can show an open disregard or plain departure from the principle involved, we shall not be disposed to interfere with the exercise of a sound discretion by the trial judge."

This same principle is expressed by Underhill in the following terms: "Whether utterances may be admissible as *res gestae,* though separated by time or distance from the principal transaction, depends on the circumstances of the

particular case. Whether evidence is admissible as a part of the *res gestae* rests largely in judicial discretion." Underhill, Criminal Evidence (4th ed.), p. 351, § 191.[1]

The case at bar presents the special circumstances which, in our opinion, require the application of the rule with less rigidity. It presents the fact that, because the boy died before the trial, he could not be used as a witness assuming that he could have been a competent witness. But the truth is that even if he could not have been used as a witness the testimony of the mother was equally admissible. Under the *res gestae rule* ". . . the fact that a person is incompetent to testify as a witness does not affect the admissibility of his declarations in evidence. Thus the statements of children, disqualified by reason of infancy from being competent witnesses, if such statements are part of the *res gestae,* have been admitted, whether they are themselves sufferers of wrong or injury or are merely present at the time of an accident or the commission of a crime." 1 Jones on Evidence, § 355a; Underhill, *op. cit.,* p. 363, § 197; Wigmore, *op. cit.,* p. 175, § 1761, who sets forth the rule in cases of rape as follows: "Where the prosecutrix is a child *too young to be a witness,* the statement should nevertheless be receivable; because, although in general a hearsay declarant must not lack the qualifications of an ordinary witness . . ., yet the peculiar nature of the present exception . . . renders this principle substantially inapplicable to children . . ." And this is so because in said evidence it is not the witness who speaks but the transaction voicing itself. *Powell* v. *Gallivan,* 118 A. 769; *Kenney* v. *State,* 79 S.W. 817. In the latter case it was held, copying from the syllabus, that "In a prosecution for rape of a child 3½ years old, and not of sufficient intelligence to testify, her incompetency as a witness did not render inadmissible evidence of complaints made by her so soon after the offense as to constitute *res gestae.*"

---

[1] See also *People* v. *Márquez,* 64 P.R.R. 354.

The cases of *Soto* v. *Territory,* 94 Pac. 1104, and *Keefe* v. *State,* 72 P. (2d) 425, both crimes against nature, decided by the Supreme Court of Arizona, reveal the distinction that should be made in the application of the rule under discussion. In the former case the facts are similar to those in the case at bar. Upon trial the mother of the boy testified that about 11 o'clock in the morning she sent her four-year-old son to a store; that about half past 12 o'clock her son returned crying and very pale; that she examined him and found his rectum lacerated and bleeding. She was then asked by the district attorney to state what was said by the boy. The question was objected to by defendant's counsel but the objection was overruled and the mother stated what was said by the boy. Other witnesses testified to having seen the boy soon after his return to his house and that he was crying, excited and complaining of his injuries, and also described his physical condition. The only question raised on appeal was the admission in evidence of the mother's testimony, as to the statements of her son regarding the details of the assault. After citing authorities to show that declarations need not be strictly contemporaneous with the main transaction, the court, at p. 1105, stated:

"Applying this doctrine to the case at bar, we cannot say that the trial court erred in admitting the testimony of the mother of the boy as to his statements of what had taken place between him and the defendant. When we consider his youth, his physical condition, the degree of excitement and nervousness he was under at the time of his return to his home, and when his statements were made, and all the surrounding circumstances shown in evidence, we think it was within the sound discretion of the trial court to have permitted this testimony to go to the jury."

On the other hand, in the *Keefe* case, *supra,* the doctrine established in the *Soto* case was ratified, but the case was distinguished on the fact that the statements of the injured girl, four years of age, and of her six-year old brother were

made to their parents on Saturday, referring to an act committed on the Monday previous and that they were made to justify their behavior when their mother discovered them engaged in immoral conduct, rather than the shock or excitement of the act committed. The court said at p. 427:

"Let us examine the testimony and see whether it could reasonably be assumed that the statements of the children were made as a spontaneous and sincere response to the shock of an act committed on the Monday previous. We are constrained to hold that such a conclusion is not reasonable nor in consonance with the ordinary experience of mankind. The matter which elicited the statements was obviously not any act which had occurred the previous Monday, but the shock caused the children by being found in flagrante delicto, and the children's statement was obviously an attempt to justify their behavior at the time by giving defendant's previous conduct as an excuse therefor, rather than the nervous excitement caused by any acts of the latter. The case of *Soto* v. *Territory*, 12 Ariz. 36, 94 P. 1104, cited and relied upon by both parties, illustrates clearly when the statements of a child are admissible as spontaneous exclamations and when they are not . . . . "

In the case at bar the statements of the boy were made to the mother immediately after his return when he was still under the nervous excitement caused by the shock as a consequence of the despicable and shameful act committed on his person and when he was still under fear of the punishment with which defendant had threatened him if he should say anything to his mother. The statements of the child were contemporaneous with the commission of the act for they have "a causal, logical, or psychological relation with the primary facts in controversy." *State* v. *Lasecki*, 106 N.E. 660, 1 (syllabus).

If to the statements of the boy we add the evidence as to the condition of his clothes and his injured body, according to the description of his mother, and also the fact that she saw her boy leave, shortly before, towards the brook together with the defendant, at the request of the latter, we feel bound

to conclude that the lower court did not err in admitting the testimony of the mother and in dismissing the motion for nonsuit.

If any error was committed by the lower court it was in sentencing the defendant to one year in the penitentiary upon being convicted by a jury of committing such a crime against a five-year-old child. As a general rule we respect the judicial discretion in imposing sentence in criminal cases; however, this does not mean that we must silence our disapproval when the case deserves it. The sentence imposed in the present case is, in our opinion, clearly inadequate in relation to the seriousness of the crime committed.

This notwithstanding, the judgment is affirmed.