242 P.2d 843

**STATE v. KUHNLEY.**

No. 1020.

Supreme Court of Arizona.

April 7, 1952.

Clarence V. Perrin, Harry L. Buchanan, and Robert D. Stauffer, of Tucson, for appellant.

Fred O. Wilson, Atty. Gen., and Charles Rogers, Asst. Atty. Gen., for appellee.

UDALL, Chief Justice.

Defendant, W. F. Kuhnley, was convicted of a felony, to wit: the crime of receiving stolen goods, knowing them to have been stolen—a violation of section 43–5506, A.C.A.1939. He has appealed from the judgment of conviction and the denial of his motions in arrest of judgment and for a new trial.

Briefly the facts stated in the light most favorable to the State present an almost unbelievable and fantastic situation. The 60 year old defendant is a licensed osteopathic physician, having practiced his profession for the past 28 years in Pima County, and for the past 3 years has resided and maintained his office at 817 East Sixth Street in Tucson. He had no previous criminal record and until his arrest bore a good reputation in the community. One Ernest Louis Jeremy, star witness for the state and an admitted drug addict with a long criminal record, was arrested by William F. Ross of the Tucson Police force on May 3, 1951, while carrying a stolen portable Singer sewing machine under his coat and his disclosures put the officers on the trail of the defendant. They procured a search warrant and upon a thorough search of defendant's premises a great many articles were found that Jeremy testified he had stolen from various business places in Tucson. The latter stated that the goods were delivered to the defendant and accepted by him with full knowledge that they were stolen. His version was that the articles, some of which were specifically ordered by the defendant, were bartered to the doctor for "part money and part morphine and part of a bill I owed him for morphine". From the record it appears that this illicit traffic was carried on be-

tween them for a period of nearly a year with a continual increase in the amount of narcotics furnished by the defendant to satisfy Jeremy's cravings.

We are presented with a voluminous record. The reporter's transcript consists of nearly 600 pages in addition to numerous exhibits, all of which we have carefully reviewed in considering the numerous assignments of error upon which the defendant relies for a reversal of his conviction. The assignments primarily deal with the trial court's rulings upon evidentiary matters, the instructions given to the jury and the sufficiency of the information. These alleged procedural errors will be more particularly stated as we treat the contentions of the defendant.

### Sufficiency of Information

■ The charging part of the information reads:

"Robert Morrison, the County Attorney of and for Pima County, State of Arizona, accuses W. F. Kuhnley of the crime of Receiving Stolen Property as follows: that on or about the 7th day of May 1951, and in Pima County, Arizona, and before the filing of this information, the said W. F. Kuhnley did then and there wilfully, knowingly, and unlawfully for his own gain, buy or receive personal property, to-wit: 2 Sewing Machines, 1 Saw, 1 Radio, 2 Typewriters, all totaling the value of more than $50.00, lawful money of the

United States, knowing the same personal property to have been stolen.

"Gordon G. Aldrich
"Deputy County Attorney
of Pima County."

A mere cursory reading of this discloses numerous defects and it is readily apparent how inartfully it was drawn, yet the defendant prior to the trial neither moved to quash the information under sections 44–1005 and 1006, A.C.A. 1939 (Rules of Cr. Proc. 208 and 209), nor demanded a bill of particulars under section 44–712, A.C.A. 1939 (Rule 153). By his failure to timely move to quash, the defendant waived all objections which are grounds for such a motion except those which are also grounds for a motion in arrest of judgment. Section 44–1016, A.C.A. 1939 (Rule 218); State v. Coursey, 71 Ariz. 227, 225 P.2d 713. As applied to the record in this case the defendant is therefore limited to asserting that the information is fatally defective in that it does not charge the commission of an offense.

■ Several specific imperfections are relied upon but we are of the opinion that the following are not fatally defective:

(1) Failure to set forth the ownership of the property alleged to have been stolen and knowingly received by the defendant or in lieu thereof to allege that the ownership was unknown. Prior to 1940 with the adoption by this court of the model code of criminal procedure such a failure would have been fatal and the authorities

to that effect are legion. However as we pointed out in State v. Coursey, supra, these earlier decisions are of little value as precedents in procedural matters because of being based upon statutes no longer in force and effect. Section 44–719, A.C.A.1939 (Rule 160) expressly provides that an information need not allege ownership unless it is necessary in charging the offense under rule 152 (section 44–711, A.C.A.1939). Such a necessity does not here appear, hence by the express terms of the rules this omission is not fatal.

(2) The information designates the crime as "Receiving Stolen Property" and the defendant contends there is no such crime either under the common law or by statute, citing People v. Tilley, 135 Cal. 61, 67 P. 42, 15 Ann.Cas. 899. Unquestionably the gist of the offense is receiving the stolen goods with a guilty knowledge, coupled with the intent of depriving the owner of possession or obtaining it for one's own gain. Section 43–5506 supra. We are however of the opinion that using this abbreviated terminology was not misleading or fatally defective.

(3) The objection with the least merit is that the information is defective because the deputy county attorney signed the information without prefixing his name with that of the county attorney. It will be noticed that in the body of the information the accusation is made in the name of Robert Morrison, county attorney. In overruling these three objections we do not want to be understood as placing the stamp of approval on an information with these omissions.

There is, however, another defect that is much more serious, viz.: that the information is defective because it does not sufficiently describe or identify the six articles the defendant is charged with receiving. The general rule is stated in 45 Am.Jur., Receiving Stolen Property, section 15, p. 398:

"The rules for determining the sufficiency of the description in charging larceny apply substantially in a prosecution for the single offense of receiving stolen property. In general, the property must be described with certainty and accuracy and with sufficient particularity to enable the court to determine that such property is the subject of larceny, to advise the accused with reasonable certainty of the property meant and enable him to make the needful preparations to meet such charge at the trial, to enable the jury to determine whether the stolen property proved to have been received was the same as that upon which the indictment was founded, and to enable the defendant to plead the verdict in bar of a subsequent prosecution for unlawfully receiving the same articles or goods. * * * "

In Korab v. State, 93 Neb. 66, 139 N.W. 717, L.R.A.1915B, 83, the court held that the information did not charge the offense of receiving stolen property where the property was described only as the personal property of John Lightfoot of the value of $48. The Court of Appeals of Maryland in Imbraguglia v. State, 184 Md. 174, 40 A.2d 329, held that an indictment was defective which charged the receipt of stolen goods consisting of one tractor trailer, one automobile, and 253,000 packages of cigarettes. It was held imperative in this situation to incorporate further description such as the trade names of the articles and that the description given would not enable the defendant to plead the verdict in bar of a second trial for the same offense.

■ In the instant case the property was capable of a complete, exact and definite description. This is not an instance where the goods are homogenous. The county attorney with a minimum of effort could have ascertained these identification marks and described the property so that there would be no doubt as to which property the defendant was charged with receiving, as the evidence shows that all the articles have serial numbers and bear well known trade names. We hold that the description was not sufficient to permit the defendant to plead former jeopardy as he could have been subsequently tried for receiving these same goods. For this reason we hold the information was fatally defective.

## Variance between the Information and the Proof

■■ It will be noted that the information in a single count charged the defendant with having knowingly received six items of stolen personal property. The natural inference is that this constituted but one offense arising out of the same transaction. While the thief Jeremy was somewhat hazy in his testimony as to dates, it indubitably appears from the state's proof that the articles in question were not delivered to the defendant at the same time but in truth and fact the thefts occurred separately and at various times between the months of September, 1950 and May, 1951 and that invariably the stolen article was immediately thereafter delivered to the defendant at his home. There is no evidence that even any two of the articles were received by the defendant at the same time. An information which charges two or more distinct and separate offenses in one count is bad for duplicity. In other words as said in Hamilton v. State, 129 Fla. 219, 176 So. 89, 92, 112 A.L.R. 1013, 1017:

"Receiving or concealing different articles of stolen property at different times and on separate and unconnected occasions constitute separate offenses and cannot be prosecuted as one crime, in one count, though all of the property is afterwards found in the possession of the defendant at the same time and place * * *."

Defense counsel repeatedly objected to this variance between the allegata and probata, and the prosecuting attorney made no effort under section 44–748, A.C.A.1939 (Rule 182) to have the court cause the information to be amended in respect of such variance to conform to the proof.

We are not unmindful of subdivision 4 of section 44–748, supra, which states that on appeal such a variance shall not be sustained unless it is affirmatively shown that the defendant was in fact prejudiced thereby in his defense upon the merits. That is precisely what does appear in the instant case because the court throughout treated it as one offense and erroneously instructed the jury that providing the other essential elements of the crime were established that they might find the defendant guilty if he received *any or all* of the articles enumerated in the information. This was done in spite of the fact that one of the articles alleged to have been received was shown to be of the value of less than $50, which at most would only constitute a misdemeanor. The jury by its general verdict in no way designated which of the several articles alleged to have been stolen they found defendant guilty of receiving. Certainly this was most prejudicial to his defense upon the merits and a conviction thus obtained cannot be permitted to stand.

The defendant was charged with receiving the property "for his own gain" rather than alleging it conjunctively (as might have been done under section 43–5506, supra) i. e., "for his own gain, or to prevent the owner from again possessing the property". Defendants contend that the evidence does not sustain the information, that gain means something reasonably substantial, that these transactions were actually a liability and that it was error to instruct the jury that "the purpose for which the goods are received is immaterial". We agree that it was error to so instruct the jury under this allegation but believe that gain does not have to be an actual monetary remuneration or profit. If the jury finds that the defendant received any benefit or advantage, directly or indirectly from the possession of these goods, that would be sufficient. 37 C.J.S., Gain, page 1421.

## Evidentiary Matters

Defendant's third assignment of error deals with the admission into evidence of exhibits J to V, except T and U, which consisted of various articles, e. g., a power saw, carpenter's plane, an electric clock, a blowtorch, etc. It was impossible for Jeremy because of the numerous items stolen by him during the year to give an exact date on which he stole and traded these articles to the defendant, but he testified that he stole them from various merchants in the city of Tucson, that he knew these were the items because he had changed the price tags, that the tags were still on the articles when taken under the

18

search warrant, that it was his writing on the tags and that he bartered them to the defendant. We believe it is true as the defendant contends that unless the goods were shown to have been received before those which were charged in the information that they would not be admissible to show the defendant's guilty knowledge, but it is also true that they would be admissible regardless of when they were received to show a common scheme, plan or system. 45 Am. Jur., Receiving Stolen Property, section 19, p. 410.

One of the defendant's most impelling assignments of error concerns the admission into evidence of the state's exhibit X-1 through X-73, which included among other things, six watches, twenty clocks, six electric razors, six electric irons, six radios, four electric drills and three electric hair clippers. Before being offered in evidence these 73 exhibits were covered by a cloth and placed upon a table in the courtroom in full view of the jury. After being admitted the cloth was removed and the jury was invited to pass by and view the array. The only identification of these items was a police officer's testimony that they were taken with the other articles under the search warrant from the defendant's home. Jeremy could not remember or specifically identify these articles as having been stolen by him, nor were any of the owners present to testify that they were stolen. The court erroneously admitted them *as part of the res gestae* and instructed the jury regarding these exhibits that there was no evidence whatever to prove they were stolen property and they should disregard any such feeling or belief they may have but to consider them only for the purpose of showing defendant's guilty knowledge.

It is not possible to give a definition of the term "res gestae" which will fit all cases. Justice Lockwood in Keefe v. State of Arizona, 50 Ariz. 293, 72 P.2d 425, 427, defined it as follows:

"The phrase '*res gestae*' means literally 'the thing done' and it is used in law as meaning the circumstances which are the automatic and undesigned incidents of the particular act in issue, and which are admissible in evidence when illustrative and explanatory of the act. * * *"

We believe the following definition from Alabama Power Co. v. Adams, 31 Ala.App. 438, 18 So.2d 145, 146, fits the facts in the instant case:

"Such acts or declarations as are thus received (as part of the res gestae) must have been done or made at the time of the occurrence of the main fact, must have a tendency to elucidate it, and must so harmonize with it as obviously to constitute one transaction. * * *"

The burden of showing facts and circumstances to bring the evidence within the res gestae rule is upon the party

offering it. In the instant case to be admissible as part of the res gestae it must be shown that the defendant received these as part of the same act or transaction as he received the articles charged in the information. In other words it must be shown to be so closely connected with the act under investigation that it becomes a part of it. These articles were not a part of the res gestae for there was no evidence tending to prove that they were received as part of the same transaction as those with which he is charged.

■ These exhibits were inadmissible for yet another reason, i. e., they were not shown to have been stolen. For this type of evidence to be admissible for any of the limited purposes indicated herein, it is essential that it be connected with the defendant and identified as stolen property. 22 C.J.S., Criminal Law, § 691; 45 Am.Jur., Receiving Stolen Property, section 19; 2 Wigmore on Evidence, 3rd Ed., section 324. It was irrelevant as it could not have tended to prove guilty knowledge, intent, etc., without first being shown to have been stolen. Under these facts we cannot conceive of any theory upon which this evidence would be admissible and the trial court committed reversible error in admitting these exhibits into evidence.

Inasmuch as the conviction must be reversed upon the grounds heretofore stated there are two other assignments of error which are worthy of our consideration to guide the lower court on retrial.

■ The defendant took the witness stand and testified that Jeremy's entire story was a fabrication. He further testified that with his moderate general osteopathic practice and with but two narcotic addicts as patients during the previous year he had only used 500 quarter grain tablets of morphine (later his story was changed to 500 quarter grain tablets per month). To impeach the defendant as well as to corroborate Jeremy the state on rebuttal was permitted to offer in evidence photostatic copies of United States Treasury Department order forms, signed by defendant, showing the purchase of 9,600 quarter grain tablets of morphine during the year in question and coupled with this was testimony as to what an ordinary practitioner would use in a similar period. We do not believe that this was an abuse of discretion for on rebuttal the state may offer any competent evidence which is a direct reply to or a contradiction of any material evidence introduced by the accused even though it may tend to prove another offense or strengthen the prosecution's case. 23 C.J.S., Criminal Law, § 1050. We do believe however that the court permitted the state to go far afield in offering evidence, for comparative purposes, as to the amount of morphine used during the year by the Tucson Medical Center.

■ As to defendant's contention that Jeremy, the thief, was an accomplice in the commission by defendant of the offense of knowingly receiving stolen goods, we hold

that the trial court correctly instructed the jury that Jeremy was not an accomplice and we adhere to the test applied and the rule laid down in the earlier cases, our latest expression being State v. Chitwood, 43 Ariz. 161, 239 P.2d 353.

The defendant's constitutional right to a fair trial was unquestionably violated, hence for the reasons heretofore stated the judgment of conviction is reversed and the cause remanded to the superior court of Pima County for retrial. Such further proceedings to be in accordance with the views herein expressed.

Reversed with directions.

STANFORD, PHELPS, DE CONCINI and LA PRADE, JJ., concur.