501 P.2d 1186

**STATE of Arizona, Appellee,**

v.

**John Byron LINNE, Appellant.**

**No. I CA–CR 405.**

Court of Appeals of Arizona,
Division 1,
Department A.

Oct. 19, 1972.

Gary K. Nelson, Atty. Gen., by Louis A. Moore, Jr., Asst. Atty. Gen., Phoenix, for appellee.

States, Meyer & Vucichevich, by Dale L. States, Phoenix, for appellant.

CASE, Judge.

On 17 July 1970, the State of Arizona filed an information against the defendant, charging him with possession of a stolen motor vehicle. Defendant pled not guilty and the matter went to trial on 22 February 1971. The jury returned a verdict of guilty against defendant and the judgment of guilt was entered on 31 March 1971. Defendant's timely motion for judgment of acquittal n. o. v. and motion for new trial were denied. Defendant appeals therefrom.

The facts viewed in a light most favorable to sustaining the conviction are as follows:

The automobile in question, a 1969 Corvette, was allegedly owned by Richard Eyrich who was a parachute folder for Lockheed Air Service at Luke Field. At trial, Mr. Eyrich testified that he could not recollect the license number of his auto or the number of the Luke Air Force Base sticker attached to his car, nor could he positively identify the automobile parts depicted in the photographs as being from his Corvette. In addition, he could not make positive identification of a set of keys allegedly belonging to the Corvette purportedly possessed by defendant.

Jack Hackworth a detective with the Phoenix Police Department, testified that on or about 8 May 1971 he entered a garage at 3206 East Pierce, Phoenix, Arizona, in which he found various automobile parts and tools. Over objections by defense counsel, Detective Hackworth testified from photographs taken at the garage which depicted the automobile parts found there. The vehicle in question was not identified by Detective Hackworth. Walter Reynolds, another police officer, also testified from the photographs over defense counsel's objections. He discussed the various automobile parts depicted in the photos. Officer Reynolds also stated that the automobile parts found in the garage were from stolen vehicles. He later admitted that this information was provided by some-

one else and not based on his own investigation. In addition, Officer Reynolds stated that he found no identifying number on the vehicle parts in the garage but that he determined they were from Mr. Eyrich's Corvette because of a Luke Air Force Base sticker attached to the grill and a key obtained from Eyrich's apartment which fit a door lock on the vehicle parts found in the garage.

Helen Loper, owner of the Pierce Street Garage, testified that she had rented the garage in January 1969 to a man named Russell. Mr. Russell always paid the rent and the defendant was never there when it was paid. Mrs. Loper stated that she had seen the defendant at the garage a few times but could not positively state when she saw the defendant last.

A technician for the Police Department testified that he found a Pepsi bottle in the garage from which he lifted one fingerprint which was identified as defendant's. The prosecution, however, was unable to produce the bottle at trial.

The alleged accomplice, Horace Russell, testified that the auto was not stolen but was given to the defendant and himself at 27th Avenue and Camelback during March of 1971 by a man named Mazick. Russell stated that after defendant drove the auto to the garage Russell was to take out the motor and transmission and give it to Mazick. Russell also alleged that all the parts found in the garage belonged to him and that the auto frames found in the garage had been cut up by him. In addition, Russell testified that he had removed the serial number and door locks from the auto in question. His testimony also revealed that the pop bottles found in the garage could have been there for as long as four months.

Defendant presents five questions for review:

1. Did the trial court err by admitting evidence which may have inferred the commission of other crimes by defendant?

2. Was it reversible error for the trial court to fail to give Instruction No. 215 of the Maricopa Recommended Jury Instructions when the State relies on testimony of an accomplice?

3. Did the State meet its burden of connecting the defendant with the commission of the crime independent of the accomplice's testimony?

4. Did the court err in denying defendant's motion for a judgment n. o. v.?

5. Should a mistrial be granted as a matter of law when a jury being polled indicates that a guilty verdict was not unanimous?

## ADMISSIBILITY OF EVIDENCE OF OTHER CRIMES

The specific objection urged by the defendant is that it was error to allow Officers Hackworth and Reynolds to tender their opinions that the automobile parts were stolen and to allow photographs of the automobile parts to be introduced, absent evidence that the parts were stolen and that defendant had some connection with them. Defendant strongly argues that it was essential that the evidence in question be connected with the defendant and identified as stolen property before it could be admitted as evidence to prove a part of a common scheme.

The State, on the other hand, argues that the photographs and testimony were admissible on the basis of relevancy. According to the State, these matters were admissible and relevant as facts showing knowledge and intent and are properly part of the res gestae or "complete story".

■ A general rule is set forth in 22A C.J.S. Criminal Law § 682, at page 730, as follows:

"* * * on a prosecution for a particular crime, evidence which shows or tends to show that accused has committed another crime wholly independent of, and unconnected with, that for which he is on trial, even though it is a crime of the same sort, is irrelevant and inadmissible."

Various Arizona authorities have established this rule to be the law of this State. *See,* State v. Norgard, 6 Ariz.App. 36, 429

P.2d 670 (1967); State v. Gallagher, 97 Ariz. 1, 396 P.2d 241 (1964), and State v. Thomas, 71 Ariz. 423, 229 P.2d 246 (1951).

It is apparent that the trial court was aware of the evidentiary problems posed by the instant case. The transcript is revealing: In response to defense counsel's objections to the evidence in question, the Court and prosecution stated:

"THE COURT: Well, I think there's some merit to your objections. Unless the State is prepared to show that that's a fact, that they were in the business of cutting up cars.

MR. STORRS: Well, Your Honor, the testimony of the accomplice basically would be that that's the business they are in. And these pictures at the scene and that garage, as what was in the garage, corroborates the testimony of the accomplice and the testimony of the accomplice can be corroborated by the circumstantial evidence, and these are some of the circumstances that are at liberty to do that.

THE COURT: I think the State is at liberty to show part of a scheme or plan or similar conduct which is relevant to the act as charged.

MR. STORRS: I think more specifically it's an intent and knowledge question, Your Honor, that is in issue. The knowledge question, is, of course, very important here because it's one of the elements of the crime, and I think it's a corroborating circumstance.

THE COURT: Well, you propose to show by these photographs that at the time the car was found by the officers that it was in this particular garage which was, I presume, according to the photographs, pretty well cluttered up with car parts?

MR. STORRS: Correct.

THE COURT: Well, I think I'll have to deny your objection—or rather, overrule your objection. So ordered."

The question of admissibility in the instant case is not unlike the question faced by the Arizona Supreme Court in State v. Kuhnley, 74 Ariz. 10, 242 P.2d 843 (1952). In Kuhnley, the defendant was charged with receiving stolen property. As part of the appeal, the defendant challenged the introduction of certain items which were not part of the res gestae and more importantly never shown by the State to be stolen. The Court in Kuhnley first gave the definition of "res gestae" as expounded by Justice Lockwood in Keefe v. State of Arizona, 50 Ariz. 293, 72 P.2d 425, 427 (1937), as follows:

"The phrase 'res gestae' means literally 'the thing done' and it is used in law as meaning the circumstances which are the automatic and undesigned incidents of the particular act in issue, and which are admissible in evidence when illustrative and explanatory of the act. * * *"

The Court in applying this definition stated:

"The burden of showing facts and circumstances to bring the evidence within the res gestae rule is upon the party offering it. In the instant case to be admissible as part of the res gestae it must be shown that the defendant received these as part of the same act or transaction as he received the articles charged in the information. In other words it must be shown to be so closely connected with the act under investigation that it becomes a part of it. These articles were not a part of the res gestae for there was no evidence tending to prove that they were received as part of the same transaction as those with which he is charged." 242 P.2d at 849.

The Court in finding further grounds for inadmissibility held:

"These exhibits were inadmissible for yet another reason, i. e., they were not shown to have been stolen. For this type of evidence to be admissible for any of the limited purposes indicated herein, *it is essential that it be connected with the defendant and identified as stolen property.* 22 C.J.S., Criminal Law, § 691; 45 Am.Jur., Receiving Stolen Property,

section 19; 2 Wigmore on Evidence, 3rd Ed., section 324. It was irrelevant as it could not have tended to prove guilty knowledge, intent, etc., without first being shown to have been stolen. Under these facts we cannot conceive of any theory upon which this evidence would be admissible and the trial court committed reversible error in admitting these exhibits into evidence." (Emphasis ours) 242 P.2d at 849.

██ We are in complete agreement with the reasoning in Kuhnley, supra, and are of the opinion that this reasoning can be applied to the instant litigation. A careful search of the record has failed to uncover any evidence which identifies the automobile parts depicted in the photographs offered by the State as being stolen. We also believe that the State has not met their burden of proving that the defendant was in possession of these parts as part of the same act or transaction that he was charged with in the information.

The State promised to connect the evidence in question and prove it was part of a common scheme or the complete story. The officers who testified could not show the automobile parts in question were stolen and the testimony of the alleged accomplice Russell did not correct this deficiency. The record is void of evidence connecting the defendant with the evidence in question.

In our opinion, the trial court may have properly denied defendant's motion to suppress and motion in limine based on the State's avowal, but we are also of the opinion that the trial court committed reversible error in not declaring a mistrial when it became clear that the evidence presented could not be connected to the defendant by counsel for the State.

The other questions presented are not dispositive of this appeal and do not require our consideration.

For the foregoing reasons, the cause is hereby reversed and remanded for a new trial.

STEVENS, P. J., and DONOFRIO, J., concur.