475 P.2d 939

The STATE of Arizona, Appellee,

v.

Benjamin B. VERRUE, Appellant.

No. 2052.

Supreme Court of Arizona,
In Division.

Oct. 28, 1970.

Gary K. Nelson, Atty. Gen. by Carl Waag, Asst. Atty. Gen., Phoenix, for appellee.

Ross P. Lee, Public Defender by Anne Kappes, Deputy Public Defender, Phoenix, for appellant.

McFARLAND, Justice.

Benjamin B. Verrue, hereinafter referred to as defendant, was tried and convicted of the possession of a narcotic, and sentenced to serve a term in the Arizona Penitentiary for from three to four years. From his conviction and sentence he appeals.

On August 23, 1968, James Moody an officer in the Arizona State Narcotic Division appeared before Justice of the Peace Ida Westfall and filed an affidavit for a search warrant and also gave testimony supporting the affidavit. The search warrant was issued. He then proceeded to the address set forth in the warrant and with another officer approached the front door while two other officers went to the rear of the house which was a single family dwelling. The screen door was closed and the front door was open, and after announcing that they were police and had a search warrant, officer Moody heard a noise of a movement from within the house. The officers entered the house and proceeded in the direction of the noise and observed the defendant and four others, either seated or in the process of rising from the kitchen table. One of the occupants of the room, Terry Saiz, fled through the back door and was apprehended by an officer at the rear of the house. His case is the subject of a separate appeal now before this court.

Moody removed a syringe full of brown liquid, a burnt spoon and an eyedropper from the kitchen table. Another syringe and needle was under the table, as well as two rubber prophylactics containing white powder, all in close proximity to the defendant. All five were placed under arrest.

In searching the defendant, Moody found 26 tinfoil packets in his pocket believed to contain heroin. At a joint trial such evidence was admitted over objection and the jury returned a guilty verdict against the defendant, Terry Saiz, and Trinidad Castro. A mistrial was declared as to Manuel Morales and Eloy Baca.

On appeal defendant first questions the denial of his motion to suppress the evidence obtained by means of the search warrant which he maintains was a violation of his constitutional rights. He contends

" * * * that there was no showing the informant upon whose information the warrant was issued was reliable, and (2) that the information furnished the magistrate does not meet the test set forth in Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723; and Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637."

In State v. Watling, 104 Ariz. 354, 453 P.2d 500, we discussed the leading United States Supreme Court decisions on information necessary for the issuing of a search warrant, including those cited by the defendant. Following the principles outlined therein we held:

"The question to be determined by magistrate under § 13–1443 and § 13–1444, A.R.S., is whether the affidavit, coupled with the testimony under oath of the 'complainant and witnesses the complainant produces,' is sufficient to show probable cause for believing that the grounds for the application exists.

*   *   *   *   *   *

"Before a magistrate may issue a valid search warrant in the State of Arizona the information furnished by 'the complainant and witnesses the complainant produces' must show probable cause as provided for in § 13–1443, A.R.S. Where probable cause is based in whole or in part on information furnished by an informer, the information must show sufficient underlying facts or circumstances from which the informant concluded that

the articles sought would be found in the place designated. The information must be sufficient to enable the magistrate to judge independently on the validity of the informant's conclusion, and why the affiant believed the informant was credible or his information reliable.

\* \* \* \* \* \*

" \* \* \* the testimony was not transcribed. In State v. Sherrick, 98 Ariz. 46, 402 P.2d 1, [cert. den. 384 U.S. 1022, 86 S.Ct. 1938, 16 L.Ed.2d 1024], we held that the information furnished the magistrate need not be wholly in the affidavit, but may be partly in the affidavit and partly by sworn testimony. Proof of the information furnished the magistrate may be by reporter's transcript, or by oral testimony. If it is by oral testimony it may be by any competent witness having knowledge of the facts who was present and need not include the magistrate.

"The fact that the Justice of the Peace was not available to testify would not be grounds for suppressing the evidence. The officer who made the affidavit testified. The answer to Question No. 2 is in the affirmative."

The defendant contends that the affidavit and the testimony did not meet the test set forth in Watling, supra. With this we do not agree. The affidavit for the search warrant reads as follows:

"A confidential reliable informant did furnish information that on 8/23/68 or within the past 2 days that Benny Verrue did have in his possession in his residence at 1254 S. 21 Place a usable quantity of heroin. Informant has proven reliable on numberous [sic] occasions in the past and cannot be revealed due to fear of great bodily harm or death. Benny Verrue is known to be an addict and information has been received on prior occasions from other confidential reliable informants that he has been a seller of heroin."

■ Like Watling, supra, there was no transcript of the proceedings. However, Magistrate Westfall testified that she swore officer Moody and that he testified as to the truthfulness of the statements in the affidavit and that she asked him questions in regard to how they knew that there "might be something there they were searching for." Also in regard to the address and such questions in regard to the informant and his reliability in the past. While she was not able to set forth in detail this testimony officer Moody testified:

"A I went down to the court with an affidavit and with a warrant to see the Judge to have the warrant issued, went into chambers, the judge swore me to the truthfulness of the affidavit and what I told her orally. Upon doing this, she signed it, kept one copy and the affidavit and gave me the warrant.

"Q You said she asked you about the truthfulness of what was in the affidavit and what you told her orally. What did you tell her orally?

"A I told her I had known Benjamin Verrue for several months. We had information on him and his narcotic activities and that I had had an informant which saw him in possession of this narcotic in his house.

"Q You told her the informant saw him in possession of these narcotics?

"A I did, yes.

"Q Were you examined in anyway in the respect of the reliability of your informant?

"A She asked me if I had used the informant in the past and had he been reliable and I said, 'Yes.' "

The information contained in the affidavit together with that contained in the testimony of officer Moody meets the test set forth in Watling, supra. Underlying facts and circumstances from which the informant concluded that articles sought would be found was shown. The information furnished was sufficient to enable the magistrate to judge independently on the validity of the informant's conclusions and

as to why the officer believed the informant was credible and his information reliable.

■ Defendant next contends that there was a misjoinder of defendants by reason of the admission into evidence of the packets of narcotics found in his pocket. He maintains that he was charged with two acts of possession. Defendant along with his four companions were all charged with the single act of possession of a narcotic drug in violation of A.R.S. § 36–1002, as amended. These were the items containing or having traces of heroin which were found on or near the kitchen table. The table was located in this defendant's home. No evidence was presented which would give rise to the belief that the narcotic drug found in defendant's pocket was separate and unrelated to the narcotic in use at the time of the arrest. In State v. Villavicencio, 95 Ariz. 199, 388 P.2d 245, this court held:

> "Evidence of other criminal acts is admissible when so blended or connected with the crime of which defendant is accused that proof of one incidentally involves the other or explains the circumstances of the crime. United States v. McCartney, 264 F.2d 628 (7th Cir. 1959); Guajardo v. State, 168 Tex.Cr.R. 503, 329 S.W.2d 878 (Tex.Cr.App. 1959); State v. Kuhnley, 74 Ariz. 10, 242 P.2d 843 (1952); 1 Wigmore, Evidence (3rd ed.) § 218; Udall, Arizona Law of Evidence § 115; Wharton's Criminal Evidence (12th ed.) § 284. This principle that the complete story of the crime may be shown even though it reveals other crimes has often been termed 'res gestae'. See, e. g., Guarjardo v. State, supra; State v. Kuhnley, supra; and Wharton, supra. Udall has criticized the use of this term as 'meaningless and confusing.' To help unconfound this confusion, we choose to refer to this as the 'complete story' principle, rather than 'res gestae.'
>
> "In the instant case, the testimony of Madrid which disclosed another crime, i. e., defendant's sale of narcotics to Neo Martinez, was admissible. The jury was

entitled to have the alleged crime, i. e., the sale to Madrid, fixed in the background of the accompanying events. The sale to Martinez shed light on the main issue. Consequently, this portion of Madrid's testimony merely completed the story of the crime."

This court has also held that evidence of a commission of another crime is admissible to show identity, intent, motive and common scheme. State v. Tisnado, 105 Ariz. 23, 458 P.2d 957; State v. Vallejos, 89 Ariz. 76, 358 P.2d 178, and Dorsey v. State, 25 Ariz. 139, 213 P. 1011.

This case can easily be distinguished from State v. Hunt, 91 Ariz. 149, 370 P.2d 642, as well as other cases cited by the defendant, in that the evidence disclosed that all defendants were in fact jointly charged with the same offense, provable by the same evidence. The cases were properly joined in accordance with 17 A.R.S., Rule 254, Rules of Criminal Procedure.

■ The defendant next contends that the state failed to establish by the evidence constructive possession of the narcotic in that dominion and control was not proven. This was not a case of "constructive possession". In Carroll v. State, 90 Ariz. 411, 368 P.2d 649, this court held:

> "The crime of possession of narcotics requires a physical or constructive possession with actual knowledge of the presence of the narcotic substance. People v. Gory, 28 Cal.2d 450, 170 P.2d 433. The theory of 'constructive possession' is not applicable in this case. It generally is applied to those circumstances where the drug is not found on the person of the defendant nor in his presence but is found in a place under his immediate and exclusive control, People v. Mack, 12 Ill. 2d 151, 145 N.E.2d 609. Under the circumstances of this case defendant's only connection with the narcotic must have been that it was in his actual possession at or immediately before his apprehension by the officers. Possession may be shown by both direct and circumstantial

evidence, People v. Antista, 129 Cal. App.2d 47, 276 P.2d 177. However, the evidentiary chain must so link defendant to the narcotic that the inference he knew of its existence and its presence where found may be fairly drawn, People v. Gory, supra; People v. Antista, supra."

And in State v. Hunt, supra, we held that "exclusive possession is not required as two or more persons may have joint possession." In the instant case the officers found all five occupants at the table in the same kitchen and all exhibits exposed on or near the table, except for the packets in defendant's pocket. The evidence was sufficient to submit the question of knowledge, dominion and control to the jury. Some of the jurors apparently believed that two of the co-defendants were merely present or that some element of the crime was missing as to such co-defendants and failed to arrive at a verdict causing a mistrial as to such co-defendants.

Defendant maintains that the trial court committed error by not granting his motion for a mistrial when under cross-examination the police chemist admitted that he had not opened and tested each of the 26 packets found in defendant's pocket, but rather had at random tested and weighed only three. The trial court ordered the removal from evidence the 23 unopened packets. The jury was fully informed of this action.

The presence of three packets were as damaging to the defense as would be any greater number. Possession of only one packet in his pocket would convey the inference that defendant had the necessary criminal intent and knowledge of the narcotics which he was charged with being in joint possession.

These were matters that go to the weight of the evidence which is a question for the jury. State v. Crawford, 106 Ariz. 322, 475 P.2d 936.

Judgment affirmed.

UDALL and HAYS, JJ., concur.