476 P.2d 515

**STATE of Arizona, Appellee,**

v.

**Terry SAIZ, Appellant.**

**No. 2093.**

Supreme Court of Arizona,
In Division.

Nov. 10, 1970.

Gary K. Nelson, Atty. Gen., by Carl Waag, Asst. Atty. Gen., Phoenix, for appellee.

Ross P. Lee, Public Defender, by Anne Kappes, Deputy Public Defender, Phoenix, for appellant.

McFARLAND, Justice.

Terry Saiz, hereinafter referred to as defendant, was tried along with Benjamin B. Verrue and others upon a charge of possession of a narcotic. Defendant was convicted and sentenced to not less than two nor more than three years in the Arizona State Penitentiary.

In State v. Verrue, 106 Ariz. 325, 475 P.2d 939, we considered the separate appeal of Benjamin B. Verrue which presented some questions identical to those presented herein. The first five deal with the validity of the seach warrant and the misjoinder of the defendants. Our holding in Verrue, supra, disposed of these questions.

The defendant in addition to the questions relating to the validity of the search warrant and misjoinder of the defendants, further states there was not probable cause to make an arrest without a warrant and that the evidence was insufficient to connect the defendant with the narcotics.

The defendant was at the home of Benjamin B. Verrue along with three others when on August 23, 1968, officers of the Arizona State Narcotic Division who had a search warrant went to the home of Benjamin B. Verrue, knocked at the door and yelled that it was the police; that they had a search warrant.

The screen door was closed and the other door was open. They announced their identity and purpose for being there. At this time they were unable to see anyone coming toward the door. They entered the house going directly to the living room where they heard a movement. Upon entering the kitchen they found people, including the defendant around the kitchen table. Officer Moody testified some of them were standing and some were in the process of getting up when they entered. Defendant ran out the back door and was stopped by an officer who was at the rear of the house. He was returned to the kitchen and there along with his four co-defendants placed under arrest. Officer Moody testified that he observed puncture wounds in the inner area of the defendant's arm. He testified "it was fresh; that it had blood which appeared to be uncoagulated." At the trial Verrue and defendant were represented by separate attorneys, evidence was admitted that officers observed a hypodermic needle, spoon which contained a piece of cotton and an eye dropper which contained some brown liquid. Over defendant's objection the state introduced into evidence twenty-six packets removed from Verrue's pocket during the arrest. Three were chosen at random for examination and were found to contain narcotics. The other twenty-three were later removed from the evidence.

A.R.S. § 13-1403, subsection 4, authorizes a peace officer to arrest a person without a warrant:

"4. When he has probable cause to believe that a felony has been or is being committed and reasonable ground to believe that the person to be arrested has committed or is committing it."

Officer Procunier testified that he "observed a subject", the defendant, "running from the back door of the house * * * and pursued him some 20 to 30 yards, * * * I told him to stop, I was a police officer * * * I grabbed ahold of him and took him back through the rear door of the residence into the kitchen area." The defendant was later placed under arrest by the officer in charge. Officer Procunier, together with the other officers, was on the premises making an investigation in connection with a search warrant issued on probable cause that a felony was being committed thereon.

At the time of the arrest all of the evidence had been observed by the officers. The defendant had attempted flight, which could be considered by the officer "as conduct evidencing a consciousness of guilt". Udall, Law of Evidence, Sec. 178, p. 383; State v. Vaughn, 104 Ariz. 240, 450 P.2d 698.

The main contention of counsel for defendant in the instant case was that Officer Procunier did not have actual knowledge of the commission of the felony as observed by the other officers and therefore not having that knowledge he did not have the right to stop the defendant. In the execution of a search warrant the officers have a right to do everything that is reasonably necessary to make a search and to prevent the destruction of evidence for which the search warrant was issued. If they could not stop an individual from fleeing, he could put evidence in his pocket and thereafter destroy it and a search warrant would thereby become useless in narcotic cases. Furthermore, an officer seeing a person fleeing from a house that is being searched would have probable cause to believe that the reason the individual was fleeing from the house was for the purpose of escaping with the article sought, thereby preventing it from being found.

In State v. Vaughn, supra, we said:

"The above statute is framed to the standards laid down by the United States Supreme Court. Ker v. State of California, [374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726]. It must, therefor, be interpreted in light of their decisions. The concept of 'probable

cause' was discussed in Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949) where it was said:

" 'In dealing with probable cause, however, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'

\* \* \* \* \* \*

" ' \* \* \* Because many situations which confront officers in the course of executing their duties are more or less ambiguous, room must be allowed for some mistakes on their part. But the mistakes must be those of reasonable men, acting on facts leading sensibly to their conclusions of probability. The rule of probable cause is a practical, nontechnical conception affording the best compromise that has been found for accommodating these often opposing interests. Requiring more would unduly hamper law enforcement. To allow less would be to leave law-abiding citizens at the mercy of the officers' whim or caprice.' 338 U.S. 176, 69 S.Ct. 1311."

In the Vaughn case, supra, the officer had probable cause to stop the suspect in connection with the investigation of a felony which had taken place in the area; the actions of the suspect gave rise to this suspicion. There was probable cause to apprehend and search the suspect. The result of the investigation reenforced the officer's belief that the suspect was guilty and arrest followed. Also see State v. Musgrove, 2 Ariz.App. 505, 410 P.2d 127, cert. den. 385 U.S. 979, 87 S.Ct. 524, 17 L.Ed.2d 441, which cites State v. Quintana, 92 Ariz. 267, 376 P.2d 130. In State v. Quintana, this court held that reasonableness of the officer's conduct would be determined by the circumstances of the case and we quoted from People v. Watkins, 19 Ill.2d 11, 166 N.E.2d 433, 437, as follows:

" \* \* \* police officers often must act upon a quick appraisal of the data before them, and the reasonableness of their conduct must be judged on the basis of their responsibility to prevent crime and to catch criminals."

In reversing a conviction for lack of evidence demonstrating probable cause the United States Supreme Court in Beck v. Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed. 2d 142, 148 stated:

"When the constitutional validity of an arrest is challenged, it is the function of a court to determine whether the facts available to the officers at the moment of the arrest would 'warrant a man of reasonable caution in the belief' that an offense has been committed. Carroll v. United States, 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543. If the court is not informed of the facts upon which the arresting officers acted, it cannot properly discharge that function. All that the trial court was told in this case was that the officers knew what the petitioner looked like and knew that he had a previous record of arrests or convictions for violations of the clearing house law. Beyond that, the arresting officer who testified said no more than that someone (he did not say who) had told him something (he did not say what) about the petitioner. We do not hold that the officer's knowledge of the petitioner's physical appearance and previous record was either inadmissible or entirely irrelevant upon the issue of probable cause. See Brinegar v. United States, 338 U.S. 160, 172–174, 69 S.Ct. 1302, 1309–1310, 93 L.Ed. 1879. But to hold that knowledge of either or both of these facts constituted probable cause would be to hold that anyone with a previous criminal record could be arrested at will.

"It is possible that an informer did in fact relate information to the police officer in this case which constituted probable cause for the petitioner's ar-

rest. But when the constitutional validity of that arrest was challenged, it was incumbent upon the prosecution to show with considerably more specificity than was shown in this case what the informer actually said, and why the officer thought the information was credible. We may assume that the officers acted in good faith in arresting the petitioner. But 'good faith on the part of the arresting officers is not enough.' Henry v. United States, 361 U.S. 98, 102, 80 S.Ct. 168, 171, 4 L.Ed. 2d 134, [138]."

We accordingly hold that the arrest of the defendant was lawful and that the evidence was sufficient to sustain the verdict of the jury.

Our holding in the Verrue case is equally applicable to this defendant as regards the questions of dominion, control and testimony thereto of the narcotic in Verrue's pocket. Possession may be jointly by two or more persons. Exclusive possession is not required. State v. Verrue, supra. The evidence was sufficient to support a finding of the jury of possession of narcotics.

Judgment affirmed.

LOCKWOOD, C. J., and STRUCKMEYER, V. C. J., concur.