NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

MICHAEL RUDY RAMOS, *Appellant.*

No. 1 CA-CR 17-0604
FILED 9-27-2018

Appeal from the Superior Court in Mohave County
No. S8015CR201700229
The Honorable Billy K. Sipe, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Nicholas Chapman-Hushek
*Counsel for Appellee*

Mohave County Legal Advocate, Kingman
By Jill L. Evans
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge Jennifer B. Campbell delivered the decision of the Court, in which Judge Paul J. McMurdie and Judge Kent E. Cattani joined.

---

**C A M P B E L L**, Judge:

¶1        Michael Rudy Ramos timely appeals his convictions and sentences for possession of dangerous drugs for sale, possession of narcotic drugs, misconduct involving weapons, possession of marijuana, and two counts of possession of drug paraphernalia. He argues the jury had insufficient evidence to find him guilty of the charges. For the reasons that follow, we affirm.

**BACKGROUND**

¶2        Highway Patrol Detectives Cortez and Stopke were on patrol when they saw a car swerve outside of its lane. Suspecting the driver was under the influence, the detectives conducted a traffic stop.

¶3        Detective Cortez approached the car and asked Ramos, the driver, if he had any contraband—such as guns, methamphetamine, or marijuana—inside the car. Ramos appeared to be nervous, looking around the interior of the car and towards the passenger before replying that there were no drugs or guns in the car. Detective Cortez asked Ramos to exit the car and began to issue him a warning for unsafe lane usage.

¶4        Meanwhile, Detective Stopke asked the passenger to exit the car and asked her for identification. She stated she did not have her identification, but explained she had her cousin's identification in her purse, which she provided to the Detective. He relayed this information to Detective Cortez, who went over to the car to speak with her. As Detective Cortez questioned the passenger, she asked if she could smoke a cigarette. He allowed her to enter the car to retrieve a lighter. When she opened the door, Detective Cortez smelled an odor of marijuana coming from inside the car. Detective Cortez asked Ramos and the passenger if either of them had a medical marijuana card. Ramos and the passenger both said they did not, and Ramos stated there was no marijuana in the car. Based on the odor of marijuana and Ramos' and the passenger's statements that they did not

have a medical marijuana card, Detective Cortez determined there was probable cause to search the car.

¶5            In searching the car, Detective Cortez found a methamphetamine pipe in the passenger seat-back pocket. He also found a men's personal hygiene bag under a pile of clothes on the backseat. Inside the bag were men's razors, deodorant, a prescription pill bottle with Ramos' name on it, and a cardboard box that was held shut by a hair tie. When he opened the cardboard box, Detective Cortez found what appeared to be an ounce of methamphetamine, some marijuana, a small amount of cocaine, a digital scale, and several sandwich bags, one of which had the corners cut off. Detective Stopke also searched the car and found a gun wedged between the driver's seat and the center console.

¶6            Ramos was indicted on one count of possession of dangerous drugs for sale (methamphetamine), one count of possession of narcotic drugs for sale (cocaine), one count of possession of marijuana, one count of misconduct involving weapons (possessing a deadly weapon during the commission of a felony), and two counts of possession of drug paraphernalia.[1]

¶7            At trial, Detectives Cortez and Stopke testified that they have received training regarding the sale of drugs and items typically used in the sale of drugs, including methamphetamine. Detective Stopke also testified that possession of an ounce of methamphetamine is "indicative of someone who is in the business of selling methamphetamine." Detective Stopke testified that in his experience, people who are in the business of selling methamphetamine carry firearms to protect themselves. Detective Cortez identified the pipe found in the car as a methamphetamine pipe and testified that in drug sales cases, he occasionally finds pipes because "sometimes people buy drugs and they want to use right there." He also said that people in the business of selling drugs typically use paraphernalia such as scales and bags. He testified that when corners are cut off a plastic bag, the plastic corners are typically used as additional containers for drug

---

[1] Ramos was originally indicted on two counts of misconduct involving weapons (counts 3 and 4). Prior to trial, the superior court severed count 3 and renumbered the remaining counts. At trial, the State moved to dismiss the "for sale" allegation in the count of possession of narcotic drugs for sale, without objection. The court granted the State's oral motion and dismissed the "for sale" allegation with prejudice.

sales. Finally, Detective Cortez testified that a primary indicator of a drug sales verses a simple possession case is the quantity of drugs: the larger the amount, the more likely that it is a sales case.

**¶8**        A forensic scientist tested the substances from Ramos' car and determined that the substances were .53 grams of marijuana, 5.02 grams of cocaine, and 28.4 grams of methamphetamine.

**¶9**        A jury found Ramos guilty on all six counts. After sentencing, he filed a timely notice of appeal.

## DISCUSSION

**¶10**        As the sole issue on appeal, Ramos contends that his convictions should be reversed because the jury lacked sufficient evidence to find him guilty. We review claims of sufficiency of the evidence *de novo*. *State v. West*, 226 Ariz. 559, 562, ¶ 15 (2011). In reviewing the sufficiency of the evidence, this court examines the evidence in the light most favorable to sustaining the verdict and resolves all reasonable inferences against the defendant. *State v. Rienhardt*, 190 Ariz. 579, 588-89 (1997).

**¶11**        Ramos first challenges his convictions for sufficiency of the evidence for possession of narcotic drugs, possession of marijuana, and possession of drug paraphernalia. Ramos focuses on the fact that the box containing the drugs was held shut by a hair tie and was within reach of both him and the passenger. Additionally, he cites the absence of fingerprints on the box and any admissions regarding who the box belonged to. In order to prove the defendant possessed drugs and paraphernalia, the State must prove, among other things, "either actual physical possession or constructive possession with actual knowledge of the presence of the . . . substance." *State v. Teagle*, 217 Ariz. 17, 27, ¶ 41 (App. 2007). "Constructive possession can be established by showing that the accused exercised dominion and control over the drug itself, or the location in which the substance was found." *Id.* Exclusive, immediate, and personal possession of drugs is not necessary to establish constructive possession. *State v. Carroll*, 111 Ariz. 216, 218 (1974). Possession may be sole or joint and two or more persons may have joint possession of drugs if they share actual or constructive possession. *See State v. Saiz*, 106 Ariz. 352, 355 (1970). The presence of the passenger and her belongings in Ramos' car does not diminish his guilt—exclusive possession of the drugs is not required. Thus, there was sufficient evidence that Ramos constructively possessed the drugs.

¶12        Ramos next challenges his conviction for possession of dangerous drugs for sale, arguing there was insufficient evidence that he possessed the methamphetamine found in the car with intent to sell. Ramos contends, because the amount of methamphetamine in the car could have been possessed for personal use, the evidence was insufficient to permit the jury to find beyond a reasonable doubt that it was possessed for sale. We disagree.

¶13        The State presented testimony from two officers knowledgeable in drug sales. A police officer's expert testimony concerning whether drugs were possessed for sale is admissible. *State v. Carreon*, 151 Ariz. 615, 617 (App. 1986). Both officers testified that the quantity of and paraphernalia found with the methamphetamine was indicative of possession for sale. Thus, the officers' testimony in this case was sufficient to permit a finding that the methamphetamine was possessed for sale.

¶14        Finally, Ramos argues there was insufficient evidence to support his conviction for misconduct involving weapons. A person commits misconduct involving weapons if he knowingly uses or possesses a deadly weapon during the commission of any felony drug offense. A.R.S. § 13-3102(A)(8). In addition to proving possession of the weapon, "[t]he state must prove that the defendant intended to use *or could have used* the weapon to further the felony drug offense underlying the weapons misconduct charge." *State v. Petrak*, 198 Ariz. 260, 266, ¶ 19 (App. 2000) (emphasis added). Ramos contends that rather than be used in furtherance of a drug offense, the gun could have been possessed "independently for self-defense." Factors tending to show a weapon could be used to facilitate a drug offense include the proximity and accessibility of the weapon to the defendant and to the site of the drug offense. *Id.* Here, Ramos' gun was within his immediate reach at the time he had methamphetamine, cocaine, and marijuana in his car. Given this evidence, the jury could have reasonably found that Ramos used, intended to use, or could have used the gun to further the underlying drug offenses.

¶15        The evidence presented at trial was sufficient for the jury to conclude that Ramos constructively possessed the 28 grams of methamphetamine for sale, and that he possessed the marijuana, cocaine, and paraphernalia found in his car. On this record, the jury also had sufficient evidence to find Ramos guilty of misconduct involving weapons.

## CONCLUSION

¶16       For the foregoing reasons, we affirm the convictions and sentences.



AMY M. WOOD • Clerk of the Court
FILED:  AA