Ernest J. **DANIELS**, Appellant,

v.

**STATE** of Alaska, Appellee.

Ira Clifford **ELLISON**, Appellant,

v.

**STATE** of Alaska, Appellee.

Nos. 297, 298.

Supreme Court of Alaska.

June 24, 1963.

Francis J. Nosek, Jr., Anchorage, for appellants.

James C. Merbs, Dist. Atty., and Dorothy Awes Haaland, Asst. Dist. Atty., Anchorage, for appellee.

Before NESBETT, C. J., and DIMOND and AREND, JJ.

AREND, Justice.

The defendants Ellison and Daniels were convicted of the crimes of burglary and larceny. The only testimony linking them to the crimes charged was that of an admitted accomplice, David Swanagan, as corroborated by the testimony of Sharon Magnuson Swanagan. David was living with Sharon at the time the crimes were alleged to have been committed but did not marry her until two months later. The defendants contend that Sharon was also an accomplice in the crimes charged and that, therefore, her testimony could not be accepted without corroboration or used to corroborate the testimony of David. The trial court ruled that Sharon was not an accomplice and that her testimony could be used to corroborate the testimony of her husband. From that ruling and the subsequent judgment and sentence entered against them below the defendants have appealed. The facts giving rise to the issue of complicity are as follows:

On the evening of January 4, 1962, according to David's testimony, the defendants came to the house where David and Sharon were living. They informed David that they knew of a place where they used

to pick up Christmas money and, without saying "where it was or what it was," as David expressed it, they asked him if he cared to look at it. The three then left the house together and proceeded in Sharon's car to the Woodland Park School which they burglarized and from the safe of which they stole a bag of money. After that the defendants returned with David to his home and there they divided the money in the bag among themselves, except for the pennies and nickels which they gave to Sharon.

Sharon testified that she was in the house when the defendants first arrived there on the evening of January 4. She gave as the reason for their being there that "they and David had some jobs to pull." She said that she was in bed when David and the defendants returned to the house later that night.[1] They awakened her and "dumped" some money from several small bank money bags onto her bed. She assisted David and one of the defendants in counting out the money and "got to keep the pennies" for herself.

When asked whether the source of the money was discussed on the night in question, Sharon answered, "I believe they said it was from the school." She denied that she heard any conversation by the three men when they were at the house the first time as to what they were planning to do, at least she could not remember that the matter was discussed. Sharon also testified that the defendant Daniels took the money bags to the garage to burn them but threw them away when he found that they would not burn. There is no evidence in the record that Sharon consented to the use of her car by David and the defendants on the night of January 4, or that she even knew at the time that they were using it.

■ Such was the uncontradicted testimony of David and Sharon. In our opinion their testimony established, as a matter of law, that Sharon was not an accomplice in this case.

■ In Mahle v. State [2] we adopted the general definition of an accomplice as a person who in some manner, knowingly and with criminal intent aids, abets, assists, or participates in a criminal act. In that case one Ahern was present in a house where the defendant Mahle and two others finalized their criminal plans to enter and steal from a Sears, Roebuck Store in Anchorage. Although Ahern refused to participate in the criminal act when it was planned, he was still at the house when the three conspirators returned with an unopened safe, which they had stolen from the Sears store as planned. He assisted them in prying open the safe and disposing of it and its contents, and he received several dollars from the safe for himself. We held that in voluntarily participating in the completion of the crime by assisting in forcing open the stolen safe and extracting the contents therefrom and then disposing of the safe and its contents, Ahern made himself an accomplice in the larceny.[3]

The instant case is distinguishable, for here the crimes of burglary and larceny were completed and the asportation of the money was at an end when David and the defendants broke into the school building, took the money bag or bags out of the safe and walked away with them. There is nothing in the record to indicate that up to this point Sharon had in any way knowingly and with criminal intent aided, abetted, assisted or participated in the criminal acts charged. She did not know what "jobs" the three men were going to "pull" when they left the house. Not until she saw them "dump" the money out of the

---

1. It is not clear in the record whether David and the defendants obtained the money on one or two trips to the school on the night in question. David mentions but a single trip. However, at one time in her testimony Sharon stated that

the men brought money into the house on two separate occasions that night.

2. Opinion No. 84, 371 P.2d 21 (Alaska 1962).

3. Supra n. 2, 371 P.2d at 25.

bags did they tell her or did she surmise that they had burglarized and stolen from a schoolhouse. There is no proof that she assisted by lending her car for the criminal venture or had any knowledge that the car was going to be used for such a purpose.

Assuming that Sharon had fore-knowledge of the criminal plans of the defendants, that fact alone would not have made her an accomplice under the law. Neither the knowledge that a crime is being committed, nor the concealment of that knowledge makes a person an accomplice, unless he aided or participated in the offense or conspired to commit it.[4]

If Sharon committed any crime under the facts of this case it was that of receiving stolen property knowing it to have been stolen. But that is a separate offense and would not make her an accomplice of the thieves,[5] unless it could have been shown, which it was not, that she conspired in a pre-arranged plan with David and the defendants for them to steal the money and to deliver it, or a part thereof, to her.[6]

We conclude that the trial court ruled correctly that Sharon was not an accomplice in this case and that her evidence could be used to corroborate the testimony of the defendants' accomplice, David Swanagan.

The judgment is affirmed.

4. People v. Yates, 71 Cal.App. 788, 236 P. 185, 187–188 (1925); Wallis v. State, 49 Okl.Cr. 58, 292 P. 1056 (1930).

5. State v. Moxley, 54 Or. 409, 103 P. 655 (1909); State v. Duggan, 215 Or. 151, 333 P.2d 907, 914 (1958).

6. People v. Raven, 44 Cal.2d 523, 282 P.2d 866, 868 (1955); People v. Ma-

Ione, 167 Cal.App.2d 400, 334 P.2d 217 (1959); Annot., 53 A.L.R.2d 817, 820–824 §§ 2–4 (1957). See also Stephenson v. United States, 211 F.2d 702, 14 Alaska 603, 53 A.L.R.2d 812 (9th Cir., 1954), a case which went up from the District Court of the Territory of Alaska.