**Michael Allison BEAVERS, Appellant,**

**v.**

**STATE of Alaska, Appellee.**

**File No. 1387.**

Supreme Court of Alaska.

Dec. 30, 1971.

James K. Tallman, Anchorage, for appellant.

Charles M. Merriner, Asst. Dist. Atty., Harold W. Tobey, Dist. Atty., Anchorage, John E. Havelock, Atty. Gen., Juneau, for appellee.

Before BONEY, C. J., and RABINOWITZ, CONNOR and ERWIN, JJ.

CONNOR, Justice.

This is an appeal from a conviction upon jury trial on the twin felony counts of receiving and concealing stolen goods. Appellant contends that the trial court erred in making certain evidentiary rulings and in allowing the case to go to the jury.

### FACTS

A burglary took place during the night of April 9–10, 1970, at a carpet firm in Anchorage. Two carpets were stolen. Acting upon information supplied by a confidential informant, two police officers went to the premises located at 1058 West 27th Street in Anchorage and, from a position off that property, observed the missing carpets through a hole in the garage door. The officers then obtained a search warrant and seized the goods. Sometime later appellant, who was living at the address in question, was arrested and charged with receiving and concealing stolen property.

Three key witnesses testified during the trial. All were called by the state. All of the issues on this appeal concern their testimony. We begin by summarizing that testimony.

Larry Ghete was the first to take the stand. Ghete admitted that he was the thief, telling the following story: On the date in question and under the telephonic directions of Don Freeman, Ghete picked up a truck by prearrangement, stole the carpets and left them in the garage at West 27th Street. Ghete was not sure who lived there, but under questioning expressed his hearsay belief that appellant did. When Ghete a second time expressed uncertainty as to the occupants of the premises where the carpets were delivered and later found, the prosecutor impeached him by his prior inconsistent statement to a police investigator. Objections to the use of hearsay, impeachment of one's own witness, lack of proper foundation and, later, the use of impeachment evidence as substantive evidence, were made by defense counsel.

The state's next witness was Don Freeman. He testified that he owned the house and garage in question, rented them to a group of three people, and that others, including the appellant, lived there. Freeman said that he heard about the carpets through an anonymous telephone call, went to the dwelling place to look at them, and decided he did not want them. Shortly thereafter, the prosecutor attempted to impeach Freeman on the question of who owned the house and garage, by virtue of prior inconsistent statements allegedly made to a police investigator. Freeman denied ever having made the alleged prior statement. Contemporaneously counsel for appellant objected and moved that the testimony be stricken. The person to whom the alleged

prior statement was made was never called to testify.

The state's last witness was Travis Murphy, who began living at the premises in question shortly after the burglary took place. He testified that he was present at a conversation during which Ghete told appellant that he had spoken with the owner of the burglarized carpet firm and had said the taking was a mistake. Murphy related that the appellant became "infuriated" at this. Murphy also testified that he had on one occasion viewed the carpets in the garage, at which time the appellant had told him not to open the door to the garage too far because the "carpeting . . . in there was hot". Murphy then testified that the appellant had had a conversation with a person who came to the house to look at the carpets. Murphy said that the appellant was leery of the visitor, but spoke with him for about 10 minutes. Finally, after recounting details of the search by the police, Murphy related a conversation with the appellant in which the appellant allegedly speculated upon the possibility of his conviction resulting from the affair.

## IMPEACHMENT BY PRIOR IN-CONSISTENT STATEMENTS

■ Three separate issues are raised concerning the state's impeachment of its own witnesses. The first concerns whether impeachment was allowable; the second deals with the manner of impeachment; the third considers whether impeachment evidence may be used as substantive evidence.

Civil Rule 43(g) (11) [a] [1] provides in relevant part:

"The party producing a witness . . may show that he has made at other times statements inconsistent with his present testimony, as provided in paragraph [c] of this subdivision."

Civil Rule 43(g) (11) [c] provides:

"A witness may be impeached by evidence that he has made at other times statements inconsistent with his present testimony. The statements must first be related to him, with the circumstances of times, places, and persons present, and the witness shall be asked whether he has made such statements and if so, shall be allowed to explain them. If the statements are in writing, they shall be shown to the witness before he is asked any question concerning them."

Appellant's assertion that the state was not allowed to impeach its own witnesses is refuted by these rules.[2] Rule 43(g) (11) [c], supra, provides the only foundation requirements which must be met by the party who seeks to impeach any witness.[3]

■ The prosecutor related the prior inconsistent statements to witness Ghete, and he indicated the persons who were present at the time of the making of the statements. Although he did not indicate the time or place of the meeting, it is evident that the witness knew of the occasion being referred to. It is clear that the purpose of the time and place requirements, that is, to give the witness notice of the events in question, has been met in this case. The witness admitted to making the earlier statements. Under these circumstances, we find nothing improper in the manner in which this witness was impeached.

■ The impeachment of Freeman presents a somewhat different picture. The inconsistent statements were related to the witness and he was informed of the per-

---

1. Rule 26(a) of the Rules of Criminal Procedure provides in part that the admissibility of evidence shall be governed by Civil Rule 43.

2. In Johnston v. State, 489 P.2d 134, 137 (Alaska 1971), we held:
 "Under our governing rules of procedure, a party may impeach his own witness by showing at other times he made statements inconsistent with his present testimony. The prosecution in the case at bar employed this technique to introduce Cash's prior statements which were inconsistent . . . ."

3. The rules do not require that the party be surprised by his witness' testimony or that the party show that his case has been damaged by his witness' testimony. See Hobbs v. State, 359 P.2d 956, 966 (Alaska 1961).

sons present at the time of his alleged statements. He was not informed of the time or place of the earlier statement, but he appears to have remembered the occasion in question. The witness was asked whether he had made the prior inconsistent statements. However, and unlike Ghete, Freeman denied having made the statements attributed to him by the prosecutor. Faced with the denial of the statements, the state would have been justified in calling the person to whom the statements were allegedly made.[4] The state, however, did not produce any further evidence about contradictory statements that Freeman may have made in the past.

We have previously held, in Pedersen v. State, 420 P.2d 327 (Alaska 1966), that the state need not, as a matter of regular impeachment procedure, call the person to whom the prior statement was made. *Pedersen* involved a witness who was unsure about the details of his earlier statement. It did not involve, as here, a flat denial by the witness of ever having made the statement.

■ An impeaching party may decide, when confronted with a denial such as occurred here, that it is not worth the trouble to pursue the line of impeachment further. Apparently that was the choice made here by the prosecution. There is no suggestion that the question was not asked in good faith. This is not a situation where an impeaching party has deliberately asked a series of questions, without basis, to imply that the witness is untruthful. In such an instance the court might be required to strike the testimony and instruct the jury to disregard it. But we do not view this occurrence as falling within that requirement. It was not error to let this line of testimony, and Freeman's answer, stand.

■ Any possible harm done by allowing the impeachment questioning to stand was minimized by other evidence. Freeman denied ever saying that appellant was the actual owner of the property where the stolen carpets were found. Other testimony established that even if appellant were not the owner he exercised enough control over the premises as a tenant to incur criminal liability for receiving and concealing the stolen goods.[5]

Appellant's final objection to the impeachment evidence introduced at his trial is that it was used for substantive evidence of the matters alleged, rather than merely to impeach the credibility of the witnesses. The issue raised here is one that is currently the subject of great controversy.

On the one hand, most courts have followed the rule that prior inconsistent statements cannot be used as substantive evidence.[6] On the other hand, most commentators [7] and code revisors, as well as the Uniform Rules of Evidence,[8] the Model Code of Evidence,[9] and the new Proposed

---

4. "If the witness denies the making of a statement . . . then . . . the [questioner], at his next stage of giving evidence, may prove the making of the alleged statement." C. McCormick, Evidence § 337, at 68 (1954) (Footnote omitted.)

5. Alaska Crim.R. 47(a).

6. *E. g.*, Bridges v. Wixon, 326 U.S. 135, 153, 65 S.Ct. 1443, 89 L.Ed. 2103 (1945); People v. Johnson, 68 Cal.2d 646, 441 P.2d 111, 68 Cal.Rptr. 599, cert. denied, 393 U.S. 1051, 89 S.Ct. 679, 21 L.Ed.2d 693 (1969); State v. Saporen, 205 Minn. 358, 285 N.W. 898 (1939). The United States Supreme Court recently made it clear that the decision in *Bridges*, supra, was "a matter of federal evidentiary, not constitutional, law." California v. Green, 399 U.S. 149, 163 n. 15, 90 S.Ct. 1930, 1938, 26 L.Ed.2d 489 (1970). In addition, the Court in *Green* rejected the holding of People v. Johnson, supra, and criticized the reasoning in State v. Saporen, supra.

7. *E. g.*, IIIA J. Wigmore, Evidence § 1018, at 996 (Chadbourn rev. 1970); C. McCormick, Evidence § 39, at 74 (1954).

8. Uniform Rules of Evidence 63(1) (1955).

9. Model Code of Evidence rule 503(b) (1942).

Federal Rules of Evidence,[10] would allow the substantive use of prior inconsistent statements.

Three reasons for not allowing previous contradictory statements as proof of the matters to which they relate are commonly given. It is generally said that prior inconsistent statements are regarded as not having independent testimonial significance because such statements rest on the credit of the declarant, who was not under oath nor subject to cross-examination when the statement was made.[11] Further, the jury is unable to view the declarant's demeanor when he made the original statement.[12]

These reasons do not, in our opinion, withstand critical scrutiny. The oath, despite its importance, is not the principal safeguard of trustworthiness.[13] Moreover, there are numerous exceptions to the hearsay rule where the admitted hearsay statement was not made under oath.[14] That the prior statement is not sworn can hardly be dispositive of this issue.

Likewise, the absence of cross-examination of the witness at the time of the prior statement is cured both by his renunciation of his earlier statements and by his availability at the trial itself. Some courts do not view this as sufficient. They take the position that subsequent cross-examination is not an adequate safeguard, and have emphasized the need for *immediate* cross-examination:

> "The chief merit of cross examination is not that at some future time it gives the party opponent the right to dissect adverse testimony. Its principal virtue is in its immediate application of the test-

ing process. Its strokes fall while the iron is hot. False testimony is apt to harden and become unyielding to the blows of truth [as time passes] . . ."

State v. Saporen, 205 Minn. 358, 285 N.W. 898, 901 (1939). But this argument is entirely inapplicable where the witness has *changed* his testimony. It has not "hardened" at all:

> "[F]ar from 'hardening', his prior statement has softened to the point where he now repudiates it."

California v. Green, 399 U.S. 149, 159, 90 S.Ct. 1930, 1936, 26 L.Ed.2d 489 (1970) (footnote omitted). The value of cross-examination is in challenging a witness' testimony. The cross-examination interest is in no way defeated when the witness himself has recanted his earlier story and now testifies favorably to the cross-examiner. Certainly he can be called upon to explain his earlier statement, which he is now rejecting. As Dean Wigmore states:

> "There is ample opportunity to test him as to the basis for his former statement. The whole purpose of the hearsay rule has been already satisfied." IIIA J. Wigmore, Evidence § 1018, at 996 (Chadbourn rev. 1970).

Finally, that the jury cannot view the demeanor of the witness when he made the prior statement is not a compelling reason to exclude it as substantive evidence. He is now present to comment on his earlier statement. This manner of denial, or qualification, will be subject to the closest scrutiny. Of course, it may have been better for the jury to view the witness' demeanor when he made the earlier statement. But that is

---

10. Proposed Rules of Evidence for the United States District Courts and Magistrates, Rule 8–01(c) (2) (i) (Preliminary Draft 1969). The Proposed Rules are printed in full at 46 F.R.D. 161 (1969).

11. *E. g.*, State v. Saporen, 205 Minn. 358, 361, 285 N.W. 898, 901 (1939). *See* California v. Green, 399 U.S. 149, 154, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970), for an exposition and analysis of the reasons commonly advanced for the rule.

12. California v. Green, 399 U.S. 149, 154, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970).

13. C. McCormick, Evidence § 39, at 74 (1954). *See also* VI J. Wigmore, Evidence §§ 1827, 1831 (3d ed. 1940).

14. "[O]f all the fifteen or so instances where hearsay evidence is admitted exceptionally, only one exception [i. e., prior testimony] requires that the hearsay to come in must have been under oath." C. McCormick, Evidence § 39, at 74 (1954).

not possible. We must make a choice between inclusion and exclusion. And the lack of such demeanor evidence is not enough on which to base a rule absolutely precluding the prior statement as substantive evidence.

This analysis indicates that the usual reasons for refusing to allow prior inconsistent statements to be used as substantive evidence are without merit. The reasons for excluding hearsay testimony do not apply to such statements. Further, it is likely that in many cases juries find it impossible to understand and act upon limiting instructions requiring them to consider evidence of prior inconsistent statements only for impeachment purposes and not as substantive evidence. Such instructions may then confuse rather than enlighten. They may obstruct more than they instruct. In sum, we can perceive no reason for denying prior inconsistent statements whatever testimonial credit they seem to deserve.

This conclusion is in accordance with our earlier decision in Hobbs v. State, 359 P.2d 956 (Alaska 1961), reaffirmed in Johnston v. State, 489 P.2d 134, 137–138 (Alaska 1971). In *Hobbs*, the government impeached one of its witnesses by means of prior inconsistent statements which the witness had made to the police. Appellant argued on appeal that the government did not introduce evidence of the prior statements solely for purposes of impeachment, but for the purpose of getting before the jury the substance of the statement which tended to incriminate appellant. In addition, appellant argued that it was error for the court not to instruct the jury that the questioning based on the contents of the prior statement should be considered only on the question of impeachment of the witness and not as substantive evidence against the appellant. We undertook a thorough analysis of appellant's contentions, and concluded:

"This court adopts the view that generally the jury should be permitted to consider the examination of a party's own witness as to other statements inconsist-

ent with his present testimony along with all the other evidence in the case, on the ground that such a rule improves the likelihood of determining the truth. Whether the jury should be instructed that such evidence should be entirely disregarded, viewed with caution, or limited to consideration for impeachment purposes only, lies within the discretion of the trial judge." 359 P.2d at 968.

 Under *Hobbs* the alternative instructions suggested in the last-quoted sentence from that case are not the only techniques at the trial court's disposal. The court may, in appropriate cases, allow evidence of a prior inconsistent statement to go before the jury with no instructions— that is, the court may treat it as substantive evidence. Barring abuse of discretion, the trial court's treatment of the prior inconsistent statement will be upheld by this court.

 Turning to the instant case, the questioning of witness Ghete furnishes no basis for objection by the appellant. The witness admitted the statements and explained them, both on direct and cross-examination. The jury was properly allowed to consider the statements both for their impeachment value and as substantive evidence. However, in Freeman's case, the witness denied making the statements attributed to him. They could not then be considered either as impeachment evidence or as substantive evidence (without testimony from the person to whom they allegedly were made). But we have already indicated that the trial court's failure to strike the testimony about the alleged statements was not error.

## HEARSAY

Before considering the technical aspects of the hearsay issue, it is appropriate to put the matter into perspective. This case was a prosecution for receiving and concealing stolen goods. The statute under which appellant was prosecuted, AS 11.20.-350, does not define "receiving" or "concealing", and we have had no occasion

in prior cases to discuss the elements of the crime.

The decisional law of other jurisdictions, with nearly identical statutes, holds it unnecessary to prove actual, manual possession of the property if the requisite intent is shown. It is only necessary that constructive possession be present. There need only be shown such a nexus or relationship between the defendant and the goods that it is reasonable to treat the extent of the defendant's dominion and control as if it were actual possession.[15]

The state, therefore, had to show that appellant in the present action, if he did not actually possess the stolen goods, at least exercised control over them. Appellant argues that much, if not all, of the evidence which the state introduced which tended to support this conclusion was hearsay.

 Testimony of three witnesses is challenged by appellant on the ground that the testimony was hearsay. Officer Gray, who was called by the prosecution, testified on direct examination that he obtained from a confidential informant the information that the appellant lived at the address where the stolen carpets were found. Counsel for appellant objected, but the trial court overruled the objection on the grounds that the statement was not hearsay. It is clear that the statement was hearsay, that is, evidence of an out-of-court statement offered to prove the truth of the matter asserted. However, because later witnesses established that the address in question indeed was defendant's residence, and because appellant in his brief has conceded that the evidence showed this, we hold that the error was harmless.

 The second hearsay objection is raised in connection with the testimony of Ghete, the admitted thief. The witness was asked by the prosecutor if he knew who lived at the premises where he left the stolen carpets. The following colloquy took place:

"Q. [THE PROSECUTOR] Do you know who lives there?

. . . . . .

"A. The Smiths used to live in there before.

"Q. Do you know who lived there the 9th of April?

"A. Well, I know now that [appellant] lives there.

"DEFENSE ATTORNEY: Well, I'd move that be stricken if he—if he gets it from hearsay. He knows now . . . .

"THE COURT: Would you inquire as to how he knows?

"Q. How do you know that, Mr. Ghete?

"A. How do I?

"Q. Um-hum.

"A. I just—well, I just know he lives there. That's—what's his name, Freeman, said that that's where he lives.

"THE COURT: I'll overrule the objection then."

It is evident that the witness' statement that the appellant lived at the address in question was hearsay. However, we conclude that the error was harmless, because other witnesses subsequently took the stand and testified that the defendant lived at the address in question.

 The third witness whose testimony is challenged on hearsay grounds is Travis Murphy. At one point in his testimony, Murphy related that the appellant had told him that the carpets were stolen. Not only was there no objection by defense counsel to this testimony, but it clearly comes within the admissions exception to the hearsay rule.

15. United States v. Casalinuovo, 350 F.2d 207, 209 (2d Cir. 1965). *See also* People v. Bugg, 204 Cal.App.2d 811, 22 Cal.Rptr. 896 (1962); People v. Candiotto, 183 Cal.App.2d 348, 6 Cal.Rptr. 876 (Cal. App.1960); People v. Piszczek, 404 Ill. 465, 89 N.E.2d 387 (1949); People v. Mulford, 385 Ill. 48, 52 N.E.2d 149 (1943); Polansky v. State, 205 Md. 362, 109 A.2d 52 (1954). *Cf.* O. Holmes, The Common Law 216 (1881).

Murphy also testified to a conversation among himself, the appellant and Ghete. Before Murphy testified to the conversation, defense counsel objected that the testimony would be hearsay. The court overruled the objection on the grounds that "it's not hearsay as the witnesses are available for cross-examination." Murphy proceeded to recount the conversation during which Ghete allegedly informed the appellant that he had gone to the owner of the burglarized premises and had confessed, saying that it all had been a mistake. The appellant reportedly became "infuriated" at hearing this.

■■■ The trial court's ruling that the testimony was not hearsay because the witnesses were available for cross-examination was erroneous. This court has never held that testimony which would otherwise be hearsay is not hearsay simply because the declarant might subsequently be called and examined on his alleged statements. We decline to do so now. In Meyst v. East Fifth Avenue Service, Inc., 401 P.2d 430, 437 (Alaska 1965), we invoked Rule 63 of the Uniform Rules of Evidence [16] to allow a witness to testify as to an earlier out-of-court statement which that witness had made. We will not go further, and allow a witness to testify to another person's out-of-court statement whenever that other person was available to testify. It is true that under an expanded reading of the rule, such an interpretation would be possible. However, as a matter of sound judicial policy, we do not believe that such a rule would be the best for our courts.

This procedure would present testimonial difficulties with very few corresponding benefits. For, if the person to whom the statement is attributed is indeed present at the hearing and can testify, that person himself should testify to the facts contained in the statement which the first witness would have attributed to him. If he does so, there is nothing lost to the party who sought to introduce that testimony as hearsay. However, if he does not, or will not, then an unproductive swearing contest, in which witnesses are attributing statements to each other, is avoided.

■■■ Despite our finding that the testimony was hearsay, there was no error in admitting it under the well-established admissions exception to the hearsay rule. Appellant's angry reaction [17] to Ghete's statement that he had confessed the crime (and thereby implicated appellant) can be taken as an implied admission of complicity in the criminal events of this case. Certainly appellant might logically have feared that Ghete's confession would quickly alert the police as to the location of the stolen carpets. Under these circumstances, appellant's display of anger was admissible under the admissions exception to the hearsay rule.

## ACCOMPLICE TESTIMONY

■■■ Appellant argues that Murphy was an accomplice and that it was error for the court to allow his uncorroborated testimony to go to the jury. The argument is based on AS 12.45.020 which provides:

"A conviction shall not be had on the testimony of an accomplice unless it is corroborated by other evidence which tends to connect the defendant with the commission of the crime; and the corroboration is not sufficient if it merely

16. Uniform Rule of Evidence 63 (1955) provides in part:
"Evidence of a statement which is made other than by a witness while testifying at the hearing offered to prove the truth of the matter stated is hearsay evidence and inadmissible except:
(1) A statement previously made by a person who is present at the hearing and available for cross examination with respect to the statement and its

subject matter, provided the statement would be admissible if made by declarant while testifying as a witness."

17. It is not clear from the transcript whether appellant expressed his feelings verbally or by conduct. In either case, the hearsay issue is raised insofar as evidence of appellant's reaction was offered as evidence of a testimonial assertion.

shows the commission of the crime or the circumstances of the commission."

The issue is properly raised by a motion for judgment of acquittal. Christy v. United States, 17 Alaska 107, 261 F.2d 357 (9th Cir. 1958), cert. denied, 360 U.S. 919, 79 S.Ct. 1438, 3 L.Ed.2d 1535 (1959). Further, despite the fact that an instruction as to the weight to be given an accomplice's testimony was not requested, it is not necessary for such a request to have been made. Alaska Crim.R. 30(b) (2).[18]

■ We must decide whether Murphy was an accomplice to the crimes of receiving and concealing stolen goods. As to receiving, Murphy cannot be categorized as an accomplice. He was not living at the premises in question when the carpets were received there; he had no knowledge of them when he began living there.

■■ The question whether Murphy was an accomplice, in the sense that the question should have gone to the jury, is a closer one. Our review of the record convinces us that he was not an accomplice. In Taylor v. State, 391 P.2d 950 (Alaska 1964), we defined the term "accomplice":

> "An accomplice is one who in some manner, knowingly and with criminal intent aids, abets, assists or participates in a criminal act."

*See also* Mahle v. State, 371 P.2d 21, 25 (Alaska 1962). Murphy knew that the carpets were stolen, as he indicates in his testimony. Such knowledge alone is not enough to qualify a witness as an accomplice. Daniels v. State, 383 P.2d 323, 325 (Alaska 1963). Further, the only overt act of Murphy's which appellant cites to prove that Murphy was an accomplice was the act of ascertaining a caller's identity at the door and relating this information to the occupants of the house before admitting the visitor. While such activity might have

been designed to screen potential buyers of the carpet and might have been aimed at aiding in the disposition of the stolen goods, it is equally likely that the action was innocent on Murphy's part. With nothing more than evidence of such an ambiguous act, we decline to find as a matter of law that Murphy was an accomplice to the crime of concealing stolen goods.

As noted above, this is a close question. The trial court decided that Murphy was not an accomplice, as a matter of law, for it failed to give the instruction required for accomplice testimony by Criminal Rule 30 (b) (2). The trial court did not let the question go to the jury, although this would have been a permissible procedure. Flores v. State, 443 P.2d 73, 79 and n. 24 (Alaska 1968). Nevertheless, the trial court's action in deciding that Murphy was not an accomplice was not erroneous; it was, therefore, proper not to give the accomplice instruction.

## SUFFICIENCY OF THE EVIDENCE

■ At the conclusion of the state's case in chief appellant moved for judgment of acquittal. A motion for judgment of acquittal puts into issue sufficiency of the evidence. Crim.R. 29(a). The motion was denied.

■ On appeal from denial of a motion for acquittal, this court "must view the evidence and the inferences to be drawn therefrom in a light most favorable to the state." DeSacia v. State, 469 P.2d 369, 371 (Alaska 1970) (footnote omitted). The trial judge, when ruling upon this motion, must view the evidence in the same manner. Bush v. State, 397 P.2d 616 (Alaska 1964). Then:

> "If he determines that fair minded men in the exercise of reasonable judgment could differ on the question of whether

18. Alaska Crim.R. 30(b) (2) reads in relevant part:
"The court . . . shall give the following basic instructions on all proper occasions:

(2) That the testimony of an accomplice ought to be viewed with distrust . . . ."
See Johnston v. State, 489 P.2d 134, 136–138 (Alaska 1971).

guilt has been established beyond a reasonable doubt . . . he must submit the case to the jury." *Id.* at 618.

Viewing the evidence adduced at trial in a light most favorable to the state, we cannot find that the trial court erred in denying the motion for judgment of acquittal and allowing the case to go to the jury. The state established that appellant lived at the address where the stolen carpets were found, that he knew that the carpets were there and that he knew they were stolen. The evidence indicated that appellant's truck was used in the theft of the carpets. Other testimony, if believed and taken in a light most favorable to the state, indicated that appellant had attempted to sell the carpets and that he had speculated on his chances of being convicted for his part in the theft of the carpets.

Under these circumstances we find that it was proper for the trial court to submit it to the jury. Fair minded men in the exercise of reasonable judgment could differ on whether guilt had been established beyond a reasonable doubt under the evidence just summarized. In such circumstances, the denial of the motion for acquittal was proper.

Affirmed.