**In the Matter of J. D., a minor child.**

**No. 1649.**

Supreme Court of Alaska.

Aug. 31, 1973.

David Backstrom, Asst. Public Defender, Fairbanks, Herbert D. Soll, Public Defender, Anchorage, for appellant.

Harry L. Davis, Asst. Dist. Atty., Fairbanks, John E. Havelock, Atty. Gen., Juneau, Monroe N. Clayton, Dist. Atty., Fairbanks, for appellee.

Before RABINOWITZ, C. J., and CONNOR, ERWIN and BOOCHEVER, JJ.

CONNOR, Justice.

J. D., a minor child, appeals from an adjudication of delinquency entered by the superior court, Fourth Judicial District, pursuant to a jury verdict that J. D. committed the crime of malicious destruction of personal property.

The petition [1] under which appellant was charged alleged that:

"On or about October 9, 1971, at or near Fairbanks, Alaska, in the Fourth Judicial District, J— D—, a minor child, did willfully, unlawfully, feloniously and wantonly, injure and destroy; to-wit, the house and personal property of Lilith Gipson, 2¾ Mile Sheep Creek Road, Fairbanks, Alaska, by smashing furni-

---

1. Under Alaska Rule of Children's Procedure 8(b), a petition is the equivalent, in a proceeding involving a minor, of an indictment or information.

ture, by painting the windows, mirrors, ceilings, walls, floors and counters with green paint, by smashing the television, by ripping the covers off the couch, by smearing jam on the bedroom walls, floors, dressers and bed, by empting [sic] the portable toilet contents on the bed and by writing obscenities on the wall. All of which is contrary to and in violation of Alaska Statute 11.20.520 and against the peace and dignity of the State of Alaska."

The evidence indicated that J. D. and ten other adolescents, 15 to 17 years of age, had gone to a dance at Lathrop High School (where most were students) on the evening of October 8, 1971. They left the dance at approximately 8:00 p. m. and repaired to the Gipson house on Sheep Creek Road with the intention of having a party. At some point during the party, the acts of vandalism detailed in the petition were perpetrated. No evidence was adduced at trial, nor does the state contend that J. D. committed any of the specific acts alleged in the petition. To the contrary, the evidence tends to show that appellant spent most of the evening upstairs, out of contact with the main group, and avoided the melee taking place below.

The state's case consisted in the testimony of three witnesses. Alaska State Trooper Rollie A. Port testified as to his investigation of Miss Gipson's complaint that her home had been vandalized, described the extent of the destruction, and discussed his interview with J. D. Timely objection to Trooper Port's testimony that J. D. admitted drinking at the party was overruled. Craig Allen Lewis, one of the youthful revelers, gave his account of the evening's events. Timely objection to his testimony concerning J. D.'s use of knives and a gun was overruled. Jay Johnson,

another youthful reveler, also described the evening's events. Timely objections to his references to J. D.'s drinking and gun handling were also overruled.

On cross-examination, Lewis testified that he did not see J. D. perform any of the acts alleged in the petition, and Johnson testified that most of the destruction took place after J. D. had left.

Following Johnson's testimony, the state rested. J. D.'s motion for judgment of acquittal was denied.

Two witnesses—other members of the group—appeared for the defense. During the cross-examination of Lucy Markey objection to her testimony that J. D. had thrown knives at a wall was overruled. Also on cross-examination, Mark Stevens testified over objection that he had relieved J. D. of a shotgun while J. D. "was hanging down from the attic".

A second motion for judgment of acquittal following the close of all evidence was denied.

In our opinion, several evidentiary infirmities in the state's case require reversal of the adjudication of delinquency. First, we think the lower court erred in admitting over defense counsel's objection testimony tending to show appellant's consumption of alcohol and his horseplay with what appears to have been an unloaded gun. The state argues that this evidence was relevant to establish that appellant aided and abetted the destruction of personal property in the Gipson house by encouraging and inciting [2] the other youths "to act in a likewise reckless and wanton manner."

■ We disagree. As to the evidence of appellant's drinking, we hereby take judicial notice of alcohol's differing effects

---

2. In Thomas v. State, 391 P.2d 18, 25 (Alaska 1964) we upheld an instruction defining "aid and abet" as follows:
   " 'Aid and abet' means to help, assist, or facilitate the commission of a crime, promote the accomplishment thereof, help in advancing or bringing it about, or encourage, counsel, or incite as to its commission."

on different people. Imbibing alcohol simply does not convert every drinker—or apparently appellant—into a destructive rowdy. Indeed, the evidence tends to show that appellant passed most of the evening upstairs out of contact with the main group, quietly pursuing other entertainment with one or two of the others. We agree with appellant that the evidence of his drinking might have been relevant had the state showed how it led to wanton behavior by the other youths on the night in question. However, we find nothing in the record to indicate that any of the others paid particular attention to appellant's alcoholic consumption. As appellant observes, the state adduced no testimony beyond that which established drinking. Under the circumstances, we think the evidence concerning appellant's use of alcohol on the night in question was irrelevant, prejudicial, and should have been excluded.

■ The evidence of appellant's horseplay with the shot gun is susceptible to similar analysis. The state did adduce testimony both in its case in chief and on cross-examination of defense witnesses establishing that at least three of the others were aware of appellant's gun play.[3] But we find nothing in the record tending to show that any of the others were encouraged or incited thereby. To the contrary, at least one of the youths was motivated to take the responsible action of relieving appellant of the gun. As with the testimony concerning drinking, we think this evidence was irrelevant, prejudicial, and should have been excluded.

■ The only specific acts of destruction that the state attempted to prove were that appellant stuck knives into the walls, a ceiling, and a floor (rug) of the house. We note that Alaska State Trooper Rollie A. Port, the officer who investigated Miss Gipson's complaint that her home had been vandalized and whose testimony established the extent of destruction perpetrated during the party, made no mention of knife marks appearing in walls, floors, or ceiling. Shortly after Craig Lewis commenced to testify for the prosecution, defense counsel raised timely objection to the entire line of questioning that tended to show appellant's having thrown knives into walls. That objection was overruled.[4] Inasmuch as neither the petition nor the state's investigating officer mentioned knife marks, we think this objection was well taken, and therefore the testimony concerning appellant's knife throwing should also have been excluded.

■ Assessing the state's case in the absence of that testimony which we think should have been excluded, the evidence remaining is clearly insufficient to support a conviction. Thus the lower court erred in failing to grant the defense motion for judgment of acquittal.

To reiterate our oft-articulated standard for decision on motions for acquittal, the test is: could fair-minded men in the exercise of reasonable judgment differ on the question of whether guilt has been established beyond a reasonable doubt.[5] In the instant case, the testimony of all the witnesses—both for the prosecution and for the defense—exonerated appellant from active participation in the specific acts of destruction alleged in the petition.[6] Indeed,

---

3. Nothing in the evidence indicates that appellant fired the gun, however, or that the gun was even loaded. Furthermore, two of the prosecution witnesses were in disagreement as to whether appellant pointed the gun at anyone.

4. Defense counsel renewed his objection shortly after Johnson took the stand on behalf of the state.

5. Gray v. State, 463 P.2d 897, 905 (Alaska 1970); Allen v. State, 420 P.2d 465, 467 (Alaska 1966); Jennings v. State, 404 P.2d 652, 654 (Alaska 1965); Bush v. State, 397 P.2d 616, 618 (Alaska 1964).

6. Because our ruling on these evidentiary matter requires reversal, we do not reach the other major question raised in this appeal: whether a fatal variance existed between the petition and the state's proof. Neither do

all of the witnesses were in agreement that the greatest number of the alleged acts occurred out of appellant's presence and after he had left the premises. Viewing all of the properly admissible evidence and the inferences reasonably deducible therefrom most favorably to the state,[7] we conclude that fair-minded men would have to differ as to whether guilt had been established beyond a reasonable doubt. It will not do to uphold this adjudication of delinquency on such gossamer proof.

Reversed and remanded for entry of judgment of acquittal and adjudication of no delinquency.

ERWIN, Justice (dissenting).

I dissent from the view expressed by my colleagues that there is no evidence upon which appellant can be found to have aided and abetted the destruction of property at the home which was damaged.

Judge Learned Hand set forth the classic definition of "Aiding and abetting" in United States v. Peoni, 100 F.2d 401, 402 (2d Cir. 1938). This test was used by the United States Supreme Court in Nye & Nissen v. United States where the Court stated:

> In order to aid and abet another to commit a crime it is necessary that a defendant "in some sort associate himself with the venture, that he participate in it as in something that he wishes to bring about, that he seek by his action to make it succeed." [1]

The definition serves as the basis for modern legal analysis in the field.[2]

The sole question thus becomes whether or not appellant associated himself with and participated in the venture in such a manner so as to become responsible therefor.[3] Clearly, such participation must be greater than mere presence at the scene of a crime.[4]

On appeal from the denial of a defense motion for a judgment of acquittal for failure to establish the necessary participation for "aiding and abetting," this court views the evidence and inferences to be drawn therefrom in the light most favorable to the prosecution.[5] In this case the evidence shows an unauthorized drinking party at the Gipson homestead which terminated with extensive damage to the house and its contents. Appellant arrived in the first carload of teenagers and was on the scene from 8:00 p. m. to 11:30 p. m. The party apparently terminated around 1:30 a. m. with a large amount of damage occurring after appellant left the Gipson home.

Everyone at the party was drinking, including appellant. While appellant spent a large portion of his time upstairs, it is clear that a number of acts of destruction were done in his presence, including putting paint on the walls, destroying toys, breaking the stove, and the throwing of books about. Appellant himself took a gun off the wall and pointed it at several people, hung by his knees from the rafters while brandishing the gun, and threw knives against the floor and wall.

I conclude under the view of the evidence most favorable to the state that appellant has by his actions associated him-

we reach the claimed error in the court's instruction on aiding and abetting nor the claimed error in the court's failure to instruct the jury pursuant to Alaska Criminal Rule 30(b)(2) that oral admissions of a party are to be viewed with caution.

Gray v. State, 463 P.2d at 905 (Alaska 1970).

336 U.S. 613, 619, 69 S.Ct. 766, 769, 93 L.Ed. 919, 925 (1949), quoting *Peoni*.

2. *See, e. g.,* State v. Buchanan, 493 P.2d 184, 185 (Or.App.1972); State v. Gladstone, 474 P.2d 274, 277–278 (Wash.1970).

3. Trounce v. State, 498 P.2d 106, (Alaska 1972).

4. Fresneda v. State, 458 P.2d 134, 141 (Alaska 1969).

5. Trounce v. State, 498 P.2d 106, 110 (Alaska 1972).

self with and participated in the venture in such a manner for the jury to find that he aided and abetted in the commission of the crime of malicious destruction of personal property as charged by the State of Alaska.[6]

I would therefore affirm the decision.

6. The entire prosecution was based on the fact that appellant "aided and abetted" the commission of the destruction and that he was not a principal therein even though he was charged as a principal; under AS 12.15.010 the distinction between principals and accessories for the purpose of criminal charges was abrogated.

Accordingly, I disagree that the evidence regarding appellant's drinking, his horseplay with the shotgun (including hanging by his knees from the rafters), and his throwing knives against the floor and wall was inadmissible. It is my view that it was within the broad discretion given the trial judge in determining relevancy matters to admit this evidence. 1 Wharton, Criminal Evidence § 151, at 277 (13th Ed. 1972). I believe that each of the above-mentioned factors introduced as evidence renders the desired inference, appellant's association and participation in the venture, *"more probable than it would be without the evidence."* C. McCormick, Law of Evidence § 185, at 437 (2d Ed. 1972). While each individual piece of evidence offered may not have been sufficient by itself to establish appellant's guilt, each was relevant to that issue. As Professor McCormick has stated, "[a] brick is not a wall." *Id.* at 436.