**Eugene C. GORDON, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. 2204.**

Supreme Court of Alaska.

March 17, 1975.

---

13. 382 P.2d at 175.

14. *Id.* at 177.

15. 382 P.2d at 179.

16. Phoenix Insurance Co. v. Newell, 329 F. Supp. 172 (D.Mont.1971). *See also* cases cited therein.

Lawrence J. Kulik, Asst. Public Defender, Herbert D. Soll, Public Defender, Anchorage, for appellant.

Stephen G. Dunning, Asst. Dist. Atty., Joseph D. Balfe, Dist. Atty., Anchorage, Norman C. Gorsuch, Atty. Gen., Juneau, for appellee.

## OPINION

Before RABINOWITZ, C. J., and CONNOR, ERWIN, BOOCHEVER, and FITZGERALD, JJ.

BOOCHEVER, Justice.

Gordon was convicted of the crime of possession of a concealable firearm by a convicted felon. His appeal raises the sole issue of whether the trial court erred in refusing a requested instruction pertaining to the credibility of an accomplice's testimony.

Eugene Curtis Gordon and Walter Paul Schumacher were convicted felons who, in August 1973, shared a room together while being confined at the State Correctional Center at Palmer, Alaska, a minimum-security institution. Gordon, the defendant in this case, had been convicted of rape and sentenced to ten years imprisonment in 1972.[1] Schumacher had been convicted of larceny and was serving a sentence that was due to expire on July 14, 1974, assuming that his good time was not revoked for any reason during the interim.

During the course of their confinement, these two inmates conversed tentatively about several alternate modes of escape from the prison. Since he discovered that Schumacher was a pilot with both commercial and instructor ratings, the thought of stealing a plane and flying nonstop to the "Lower 48" increasingly interested Gordon. Schumacher knew that a light aircraft with relatively long range would have been necessary for such an odyssey. For this reason, a particular twin-engine Beechcraft with tip tanks, which Gordon discovered was kept in the Palmer area (and which Schumacher later saw) figured in their escape discussions. Finally, Gordon told Schumacher that he had a .45 caliber pistol at his home in Anchorage and that he intended to obtain it, presumably for use in their escape attempt.

Evidently, Schumacher was not as serious about their escape speculations as he might have led Gordon to believe. It appears that he had been keeping Mr. McKibben, a correctional officer at Palmer, informed of their plans. Schumacher had also discussed with McKibben the possibility of a gun being smuggled onto the premises.

On or about the evening of August 21, 1973, Gordon's wife visited him in the administration building of the camp. At 10:00 p.m., when visiting hours were over, the defendant escorted his wife out to her car. Schumacher, who had been talking with McKibben in the administration building, testified that he noticed Mrs. Gordon hand something to the defendant. Later, upon returning to their dormitory room,

---

1. Both his conviction and sentence were affirmed in Gordon, v. State, 501 P.2d 772 (Alaska 1972).

Schumacher observed Gordon remove an object wrapped in aluminum foil from the back of his trousers. He noticed that the package was the same size and shape as a .45 caliber Colt pistol. Schumacher had served in the U.S. Army as a gunnery instructor and, consequently, was familiar with weapons of this sort. Schumacher, however, never actually saw the gun itself.

Mr. McKibben testified that after Mrs. Gordon's departure, the defendant was acting strangely. Suspecting that Gordon had acquired a gun, McKibben went to Schumacher, who, in response to the desk officer's inquiries, stated that Gordon did indeed have a pistol. Gordon was then taken to the administrative building for questioning. Later that night, a search for the weapon was begun by prison officials. At 2:00 or 3:00 o'clock in the morning of August 22, a .45 caliber pistol and a loaded magazine were found wrapped separately in foil and buried near the barracks building where Gordon stayed.

An attempt was made to fingerprint the pistol, but no fingerprints whatsoever could be developed. Except for checking with the National Crime Information Center to determine whether the gun had been reported lost or stolen (it was not), no other attempt to determine ownership was made by the authorities.

The defendant was charged with violation of AS 11.55.030 which makes it unlawful for a convicted felon to have in his possession a concealable firearm. A jury trial was held before Judge James A. Hanson of the Superior Court in January 1974. The three principal witnesses against the defendant were fellow inmate Schumacher, Officer McKibben, and Sergeant John Lucking of the Alaska State Troopers.[2] In relation to Schumacher's testimony, defense counsel offered a jury instruction on the definition of an accomplice, the credibility to be accorded accomplice testimony and the necessity for corroboration of such testimony.[3] The instruction was denied by the trial judge.

The jury found Gordon guilty of the offense charged, and their verdict was the basis of the judgment of conviction entered by Judge Hanson on March 11, 1974. The defendant was sentenced for a term of five years to run consecutively to the ten-year sentence he was then serving. The defendant appeals that judgment of conviction, claiming that the trial court committed reversible error in failing to give the requested instruction concerning accomplice testimony. The defendant contends that Alaska R.Crim.P. 30(b)(2) requires such an instruction in this case.[4]

2. This latter witness testified that, when he interviewed Mr. Gordon to obtain the correct address of his wife, he mentioned the possible presence of Mrs. Gordon's fingerprints on the gun. The defendant responded that it was only natural since it had been around the house for years and that he himself had brought the weapon into the camp when he returned from a furlough the previous weekend.

3. Proposed instructions:
   A.
   An accomplice is one who is liable to be prosecuted for the identical offense charged against the defendant on trial.
   To be an accomplice, the person must have knowingly and with criminal intent aided, promoted, encouraged, or instigated by act or advice, or by act and advice, the commission of such offense.
   B.
   It is the law that the testimony of an accomplice ought to be viewed with dis-

trust. This does not mean that you may arbitrarily disregard such testimony, but you should give it the weight to which you find it to be entitled after examining it with care and caution in the light of all the evidence in the case.
   C.
   A conviction cannot be had upon the testimony of an accomplice unless it is corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense.

4. Alaska R.Crim.P. 30(b)(2) provides in part:
   The court . . . whether or not requested to do so, shall give the following basic instructions on all proper occasions:
   *     *     *     *     *
   (2) That the testimony of an accomplice ought to be viewed with distrust and the oral admissions of a party with caution.

■ Criminal Rule 30(b)(2) states that the instruction concerning accomplice testimony is mandatory "on all proper occasions". The instruction cautions the jury to view with distrust any testimony of an accomplice. The purpose of the rule is to emphasize the very suspect motivations of this class of witness. Such witnesses oftentimes are cooperating with the prosecution to obtain some special advantage for themselves, and they may be willing to distort the truth or to lay the entire blame on the defendant in hopes of avoiding further criminal liability or imprisonment. The instruction serves to inform the jury of this background of "intrigue, contrivance, distrust and prejudice to afford fundamental fairness to the parties consistent with due process of law." [5]

The trial judge in the instant case refused to give the jury instruction required by the rule and thereby implicitly found that, as a matter of law, Schumacher was not the accomplice of Gordon in the crime of unlawful possession of a concealable firearm. The threshold question on this appeal is whether the trial judge's finding in this matter was correct.

■ An accomplice may be either a principal in the first or second degree or an accessory before the fact.[6] Most jurisdictions, including Alaska, have by statute done away with the common law distinction between principals and accessories before the fact, making all those who participated in the commission of the offense liable as principals.[7]

In Beavers v. State,[8] we defined the term "accomplice":

> An accomplice is one who in some manner, knowingly and with criminal intent aids, abets, assists or participates in a criminal act.

■ A person need not commit every element of the offense in order to be guilty as an accomplice.[9] However, it is necessary that he in some way "associate himself with the venture, that he participate in it as in something that he wishes to bring about, that he seek by his action to make it succeed".[10] Prior knowledge that a crime is about to be committed and concealment of that knowledge in itself won't make one criminally liable as an accomplice.[11] Furthermore, once a crime has been committed, concealment of one's knowledge of the crime does not make one an accomplice. But if he has actively worked to conceal the crime, he may be liable as an accessory after the fact.[12] Finally, mere presence at the scene of the crime is not in itself enough to make one an accomplice.[13]

5. Anthony v. State, 521 P.2d 486, 491 (Alaska 1974).

6. *See* 3 Wharton's Criminal Evidence § 645 at 342–43 (13th Ed. Torcia 1973).

7. AS 12.15.010:
   The distinction between an accessory before the fact and a principal, and between principals in the first and second degree is abrogated; and all persons concerned in the commission of a crime, whether they directly commit the act constituting the crime or, though not present, aid and abet in its commission, shall be prosecuted, tried, and punished as principals.
   However, accessories after the fact to the commission of felonies are distinguished from accomplices.
   AS 12.15.020:
   All persons who, after the commission of any felony, conceal or aid the offender with knowledge that he has committed a felony and with intent that he may avoid or escape from arrest, trial, conviction, or punishment are accessories. There are no accessories in misdemeanors.

Such persons are separately punishable for their distinct offense, *see* AS 11.10.050, and they may be tried and convicted prior to the principal felon's trial and conviction, *see* AS 12.15.030.

8. 492 P.2d 88, 97 (Alaska 1971), *quoting* Taylor v. State, 391 P.2d 950 (Alaska 1964).

9. Anthony v. State, 521 P.2d 486, 495 (Alaska 1974).

10. United States v. Peoni, 100 F.2d 401, 402 (2nd Cir. 1938). *Accord* Nye & Nissen v. United States, 336 U.S. 613, 619, 69 S.Ct. 766, 93 L.Ed. 919, 925 (1949); In re J.D., 513 P.2d 654, 657 (Alaska 1973) (dissenting opinion of J. Erwin).

11. Daniels v. State, 383 P.2d 323, 325 (Alaska 1963).

12. *See* Fajeriak v. State, 439 P.2d 783, 788–89 (Alaska 1968), cert. denied, 393 U.S. 881, 89 S.Ct. 184, 21 L.Ed.2d 155 (1968).

13. Fresneda v. State, 458 P.2d 134, 144 (Alaska 1969).

█ The real test of complicity is whether the person *is* or *can be* charged with the same crime for which the defendant is being prosecuted.[14] In the instant case, Gordon is charged with unlawful possession of a concealable firearm. We therefore must ascertain whether Schumacher could be charged with the commission of that crime. It is well settled that exclusive possession of contraband, e. g. narcotics, is not required and that a person may be found to constructively possess such materials actually in the physical possession of others. However, it must be shown that the person has some right to "dominion and control" over the item.

The Supreme Court of Arizona in State v. Hunt[15] described what would be required in this context:

The offense of possession of a narcotic drug requires a physical or constructive possession with actual knowledge of its presence. It is not necessary the drug be found on the person of the accused but the circumstances must show he had dominion and control over it. Exclusive possession is not required as two or more persons may have joint possession of the drug. Mere presence at a place where a narcotic drug is found is insufficient to show knowledge of its presence.

█ Relying on sound authority, the defendant argues correctly that, whenever reasonable doubt exists on the issue of the complicity of a witness, such doubt should be resolved in favor of the defendant and the accomplice instruction should be given.[16] We have implicitly recognized and implemented this rule in Flores v. State.[17] There we held it was not error for the trial judge to submit to the jury the question of whether a key prosecution witness was an accomplice. The witness had been implicated in two murders with the defendant at least to the extent of being an accessory after the fact, and the issue of his involvement in the actual killings themselves was a close factual question. The facts of *Flores* were distinguished from the facts of two earlier Alaska cases— Mahle v. State[18] and Daniels v. State.[19] In *Mahle* we held that where the uncontradicted evidence showed that the witness had assisted in the final asportation of the property, such a person was an accomplice in the larceny as a matter of law, and it was error not to so instruct the jury. In *Daniels,* a witness who knew beforehand that a crime was to be committed and who helped count the spoils after the theft was held *not* to be an accomplice as a matter of law. The court in *Flores* then concluded:

In our view, on the facts appearing in this record, the question of whether [the

14. Howard v. State, 496 P.2d 657, 660 (Alaska 1972) ; Stephenson v. United States, 14 Alaska 603, 211 F.2d 702, 704 (1954) ; State v. Kasai, 27 Utah 2d 326, 495 P.2d 1265, 1266 (1972) ; State v. Polk, 5 Or.App. 605, 485 P.2d 1241, 1243 (1971). For instance, we have held that one who receives stolen property with the knowledge that it is stolen is not necessarily an accomplice to the larceny. Daniels v. State, 383 P.2d 323 (Alaska 1963), cert. denied, 375 U.S. 979, 84 S.Ct. 502, 11 L.Ed.2d 424 (1964). Only if the receiver assists in the final asportation of the property, [Mahle v. State, 371 P.2d 21, 25 (Alaska 1962)], or if he is acting in accordance with some pre-arranged scheme [Stephenson v. United States, 14 Alaska 603, 211 F.2d 702 (1954)] would he become an accomplice. Similarly, one who assists in disposing of the body of a murder victim may become an accessory after the fact but does not thereby automatically become an accomplice to the murder. Galauska

v. State, 527 P.2d 459 (Alaska 1974) ; Fajeriak v. State, 439 P.2d 783 (Alaska 1968).

15. 91 Ariz. 149, 370 P.2d 642, 645 (1962) (citations omitted). *See also* United States v. Bonham, 477 F.2d 1137 (3rd Cir. 1973) (narcotics) ; State v. Saiz, 106 Ariz. 352, 476 P.2d 515, 518 (1970) (narcotics) ; State v. Verrue, 106 Ariz. 325, 475 P.2d 939 (1970) (narcotics) ; People v. Rogers, 5 Cal.3d 129, 95 Cal.Rptr. 601, 486 P.2d 129 (1971), for further applications of the constructive possession test.

16. Phelps v. United States, 252 F.2d 49, 52 (5th Cir. 1958) ; Head v. Commonwealth, 310 S.W.2d 285 (Ky.1958) ; State v. Porter, 125 Mont. 503, 242 P.2d 984 (1952) ; State v. Bailey, 254 N.C. 380, 119 S.E.2d 165 (1961).

17. 443 P.2d 73, 79 (Alaska 1968).

18. 371 P.2d 21 (Alaska 1962).

19. 383 P.2d 323 (Alaska 1963).

witness] was an accomplice lies in an area between the factual situations which were present in the *Mahle* and *Daniels* cases.[20]

Thus, a fair reading of these complementary cases discloses that whenever the undisputed testimony establishes that a person is an accomplice or is not an accomplice as a matter of law, the question need not be presented to the jury. If, however, there is some issue as to the complicity of a witness in a given crime, that question must be presented to the jury for resolution. In the recent case of Galauska v. State, we reaffirmed this conclusion.[21]

In his argument that the accomplice instruction was mandated, the defendant does not point to any specific evidence which would raise the issue of Schumacher's constructive possession of the firearm. Instead, the defendant argues in terms of Schumacher's complicity in crimes not charged. Neither Gordon nor Schumacher were charged with escape or attempted escape.

▮ Since possession of the concealable firearm by Gordon, a convicted felon, was the only crime charged, and since there was no evidence whatsoever indicating that Schumacher shared some dominion and control over the gun, there is no basis from which a jury could reasonably infer that Schumacher was an accomplice, and

therefore the trial judge did not err in refusing to give the requested instruction. Schumacher did not request that Gordon procure the weapon, nor is there any evidence that he expressly encouraged the defendant to do so. There is no evidence that the defendant was acting as Schumacher's agent at any time during this period. Schumacher never had the gun in his physical possession. Nor did he share any right of access to the gun. Gordon did confide in the witness that he had obtained the gun, but there is no evidence that he revealed its whereabouts to Schumacher once he had buried it. This, of course, left Gordon with sole access to the pistol. In summary, the record indicates that the idea of getting the gun originated with the defendant and, once received, he retained exclusive control over it until it was later found by the prison officials. In fact, Schumacher was instrumental in that recovery since he told McKibben that Gordon did have a gun in the camp.

We conclude, therefore, that there was no evidence from which the jury could reasonably have inferred that Schumacher was an accomplice. The trial judge did not err in finding that, as a matter of law, Schumacher was not Gordon's accomplice in the crime charged herein and that the instruction concerning accomplice testimony was not required.

Affirmed.

20. 443 P.2d 73, 79 (Alaska 1968).

21. In Galauska v. State, 527 P.2d 459 (Alaska 1974), we held specifically that, where there is no evidence from which the jury could infer that a witness was an accomplice, the trial court may properly refuse to instruct the jury that the alleged accomplice's testimony is to be viewed with distrust. Galauska involved a witness who testified that he had assisted the defendant in rolling the still-living body of a third party, whom the defendant had allegedly savagely beaten with a rifle, into a nearby ravine. The victim's eventual death caused both men to be jointly indicted for murder. The witness agreed to plead guilty to an information charging manslaughter in return for a specified sentence. He then became the principal witness against Galauska in the latter's trial on the murder charge.

In *Galauska* there was some evidence from which the jury could have inferred that the witness was the actual perpetrator of the crime. The defendant testified that it was the witness himself who had administered the fatal beating. The accusations of the defendant and the witness were mutually exclusive, and the court held (with Justice Boochever dissenting) that there was no evidence in the record which might have indicated that they both participated in the beating. Therefore, as a matter of law the witness was not the accomplice of the defendant, and the trial court did not err in refusing to give the requested instruction. The court relied on Fajeriak v. State, 439 P.2d 783 (Alaska 1968), which likewise involved a clear conflict in the testimony of the defendant and the witnesses, and no matter which version of the killing was believed, there was no basis for inferring that they had jointly participated in the crime.